IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Michael Fierro, | ) | OPINION |
| | ) | |
| Petitioner, | ) | Case No. 20100104-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| Park City Municipal Corporation and | ) | (October 25, 2012) |
| Park City Employee Transfer and | ) | |
| Discharge Appeal Board, | ) | 2012 UT App 304 |
| | ) | |
| Respondents. | ) | |

-----

Original Proceeding in this Court

Attorneys:     Ryan B. Hancey, Salt Lake City, for Petitioner
                    Thomas A. Daley and Kerry A. Gaines, Park City, for Respondents

-----

Before Judges Orme, Davis, and Voros.

ORME, Judge:

¶1     Michael Fierro seeks judicial review of the Park City Employee Transfer and Discharge Appeal Board's decision finding that the Park City Police Department had sufficient grounds for terminating his employment. We set the decision of the Appeal Board aside, while recognizing the board's opportunity for limited reconsideration.

BACKGROUND

¶2 After serving in the Park City Police Department for several years, Fierro was terminated in 2009 for employee misconduct. Upon his termination, Fierro received a letter entitled "Internal Investigation Completion Notice" (the Termination Memo), with an attached summary of findings explaining why he was terminated. Fierro was provided no other information concerning the reasons for his termination. The Termination Memo explained that the investigation was conducted by a department sergeant; that it was "complete, thorough, and conclusive"; and that "[b]ased on the findings, [Fierro's] employment with Park City Police Department [was] terminated effective immediately."

¶3 The summary of findings in the Termination Memo included information concerning five acts of misconduct, with accompanying references to the particular rules that Fierro had violated. Specifically, the Termination Memo identified these instances of misconduct: (1) Fierro conducted investigations that were "clearly outside the scope of his basic job duties and restrictions" while limited by the Department to "light duty work"; (2) Fierro wrote a series of "insubordinate, disrespectful" emails to his supervisors that showed he "was unwilling to obey lawful orders"; (3) Fierro misled his supervisors about his level of involvement with a child sex abuse case;[1] (4) Fierro exploited his position of authority as a police officer to gain access to the jailed suspect charged in the sex abuse case for reasons unrelated to his work;[2] and (5) Fierro disclosed confidential information regarding the sex abuse case to a third party and lied about those disclosures when questioned by his supervisors.

---

[1] Although Fierro had no responsibility as a police officer for the case, he communicated multiple times with the assigned investigator and expressed his disbelief that the suspect was guilty of the charges. When asked by his supervisors about his involvement in the case and the amount of communication he had with the investigator, Fierro downplayed his actions and falsely told his supervisors that he had not spoken with the investigator at all.

[2] Fierro, who served as a lay leader in his church, became aware that one of his parishioners was the suspect in the child sex abuse case. Concerned for this parishioner, Fierro went to the jail where the suspect was housed and gained access to him by using his police credentials.

¶4     A week after being terminated, Fierro appealed the decision to the Appeal Board, pursuant to Utah Code Ann. § 10-3-1106(2)–(3) (2007).[3] The Appeal Board held a hearing on January 15, 2010, but failed to make a record of the proceedings. Fierro sought our review of the ensuing Appeal Board decision upholding his termination. Unable to review the decision without a record, we directed the Appeal Board to give Fierro a new hearing, on the record.

¶5     At the second hearing, the Appeal Board heard evidence and made findings regarding a number of acts of misconduct, many of which Fierro contends were actually different from those alleged in the Termination Memo, and one of which was totally unrelated to anything mentioned there. While counsel for Park City was questioning witnesses regarding violations not alleged in the Termination Memo—specifically that Fierro contacted the suspect in the sex abuse case despite having a conflict of interest—Fierro's attorney objected, stating, "Officer Fierro was not terminated for meeting with the suspect in jail. There's no mention of that conflict of interest in the [Termination Memo], and I object to this line of questioning. We're not here to harp on what he did in the jail." Fierro's attorney argued that the means by which Fierro gained access to the suspect was identified in the Termination Memo as misconduct, not the interaction itself. Park City's attorney responded that "because not every little item was set forth in the termination letter doesn't matter." Citing fairness concerns, Fierro's attorney added, "It's unfair to go into things that he wasn't fired for. He was fired for some very specific reasons, and the Board's job is to determine whether or not those things happened and whether . . . they merit a termination, not to talk about issues that are unrelated. It's unfair." Without explicitly ruling on the objection, the Appeal Board permitted counsel for Park City to continue its line of questioning.

¶6     Ultimately, the Appeal Board upheld the termination, finding that Fierro had a close relationship with the suspect in the sex abuse case and therefore had a conflict of interest in the case; that Fierro had visited the suspect in jail in an ecclesiastical capacity despite this conflict; that Fierro obtained access to the suspect in jail by exploiting his position as a police officer; that Fierro communicated with the suspect about the alleged crime; that Fierro gave information he received from the suspect to investigators and

---

[3]Because there have been subsequent amendments to the applicable statutory provisions, we cite the version of the Utah Code in effect at the time of Fierro's termination.

otherwise attempted to influence investigations; and, finally, that Fierro had removed a long distance call block on his phone without the requisite authorization to do so.

¶7    Following the hearing before the Appeal Board, Fierro again sought our review as permitted by statute. *See* Utah Code Ann. § 10-3-1106(6)(a) (2007). *See also Thorpe v. Washington City*, 2010 UT App 297, ¶ 25, 243 P.3d 500 (noting that "where the gravamen of the complaint is termination of public employment by a merit employee, any judicial review must be sought in the court of appeals") (internal citation omitted).

ISSUES AND STANDARD OF REVIEW

¶8    Fierro seeks our review of the Appeal Board's decision, arguing that the Appeal Board exceeded its authority and violated Fierro's due process rights in considering evidence unrelated to the charges specified in the Termination Memo. "Due process challenges . . . are questions of general law and we give no deference to the agency's determination of what constitutes due process[.]" *Tolman v. Salt Lake County Attorney*, 818 P.2d 23, 28 (Utah Ct. App. 1991). *See also Union Pacific R.R. Co. v. Auditing Div.*, 842 P.2d 876, 881 (Utah 1992) (employing "a no-deference correction-of-error standard to review claims of unconstitutional agency action"). Fierro also contends that there was insufficient evidence to support the Appeal Board's decision and that even if some discipline was in order, Fierro was disproportionately punished given the nature of the charges. Because we agree that the Appeal Board exceeded the scope of its authority in considering charges against Fierro that were not contained in the Termination Memo, we do not reach Fierro's contentions regarding the sufficiency of the evidence and the proportionality of the discipline imposed.

¶9    Park City asserts that Fierro waived, or at least did not preserve, the primary issue that he has briefed in his challenge to the Appeal Board's decision. The city also contends that the Termination Memo cannot be treated as an exhaustive charging document for purposes of appeal to the Appeal Board and that the city should not have been bound by the four corners of this document in justifying Fierro's dismissal. Additionally, Park City argues that even if it is bound by the four corners of the document, all but one of the points of misconduct heard and accepted by the Appeal Board are sufficiently reflected in the Termination Memo.

## ANALYSIS

### I. Fierro Adequately Preserved His Issue.

¶10    Park City claims that Fierro has not shown that he adequately objected to the introduction of evidence regarding the sex abuse case that he deemed to be outside the scope of the hearing.  Park City notes that Fierro participated in a discussion of each of these disputed matters at the hearing, in some instances providing the Appeal Board with relevant documents.  Park City contends that, by doing so, Fierro waived his right to pursue his primary issue.

¶11    Regarding Fierro's alleged failure to properly object, there are several instances during the course of the hearing in which Fierro's counsel raised objections and concerns when Park City presented evidence of anything that arguably fell outside the scope of the Termination Memo.  When a witness was asked about a fraud investigation, counsel objected because issues relating to the investigation were not part of the Termination Memo.  When a witness was asked about Fierro's conflict of interest with the sex abuse suspect, Fierro's counsel objected, stating, "Officer Fierro was not terminated for meeting with the suspect in jail.  There's no mention of a conflict of interest in the termination letter, and I object to this line of questioning."  During that same exchange, counsel added, "[Fierro] was fired for some very specific reasons, and the Board's job is to determine whether or not those things happened and whether . . . they merit a termination, not to talk about issues that are unrelated.  It's unfair."  These objections during the hearing sufficiently demonstrate that Fierro preserved his primary issue for our review.

¶12    After having made his objections and having not had them sustained, Fierro's counsel understandably addressed matters that were not mentioned in the Termination Memo.  Park City presented its case first, introducing wide-ranging evidence before Fierro had a chance to present his case.  Any evidence or discussion aimed at refuting the city's presentation was merely reactive to what preceded Fierro's presentation. Fierro certainly should not have been expected to withhold whatever defense he could mount to the charges that the Appeal Board had allowed to be presented by Park City simply because he disagreed about whether they were relevant.  A person "need only to have raised the issues currently on appeal . . . for the issues to be properly preserved." *Columbia HCA v. Labor Comm'n*, 2011 UT App 210, ¶ 6, 258 P.3d 640.  Fierro's counsel

adequately made his objections to the Appeal Board's consideration of what he regarded to be extraneous matters. The issue was not waived and has been preserved.

## II. Park City Was Required to Provide Fierro with Meaningful Notice of the Reasons for His Termination.

¶13 The statutory scheme that describes the process for appealing a termination decision to a municipal appeal board requires that the city provide notice of the grounds for termination so that an employee can meaningfully evaluate whether an appeal is likely to be productive and what information will be considered by the board. *See* Utah Code Ann. § 10-3-1106 (2007). In recent years, we have discussed section 10-3-1106 as a provision that, when applicable, exists to provide "protections" to terminated employees seeking review of their dismissal. *See Pearson v. South Jordan*, 2009 UT App 204, ¶¶ 10–12, 216 P.3d 996 (noting that "[s]ection 10-3-1106 grants procedural protections to . . . employees" appealing a termination). Examination of the statutory language reveals that these "protections" extend beyond the simple statutory right to appeal a termination decision. They also provide employees with the means to adequately defend their actions before the appropriate appeal board.

¶14 The statute provides municipal employees with the opportunity to seek review of a termination decision before an appeal board that the city is statutorily required to create. *See* Utah Code Ann. § 10-3-1106(2)(a), (7). The statute further provides that once an employee has filed his appeal with the municipality, "the appeal board shall forthwith commence its investigation, take and receive evidence, and fully hear and determine the matter *which relates to the cause for the discharge*." *Id.* § 10-3-1106(3)(b)(ii) (emphasis added).

¶15 Further, section 10-3-1106(4) provides the employee with the right to "have a public hearing," appear at that hearing, "confront . . . witness[es]," and "examine the evidence to be considered by the appeal board." *Id.* § 10-3-1106(4)(a)–(d). The Administrative Rules of the Employee Transfer and Discharge Appeal Board, promulgated by Park City to govern the administrative review process, mirror the language of section 10-3-1106 in granting the board authority to consider the evidence and in providing the employee the right to appear and defend.

¶16    Implicit in the right of an employee to "examine the evidence" and witnesses at a public hearing is the obligation of the city to provide sufficient notice so that an employee may adequately prepare should he decide to exercise those statutory rights. It would be illogical for the statute to explicitly require a municipality to establish an appeal process through which an employee has an opportunity to refute the allegations against him, and yet view it as not requiring that the city give that employee clear notice of the allegations he should be prepared to address. Very simply, the person being charged with acts of misconduct is entitled to notice of the reasons for the disciplinary action. In no other way can he make an informed decision about whether to appeal, and should he decide to appeal, in no other way can he adequately prepare for the hearing.

¶17    Requiring notice of the reasons for an employee's termination is consistent with our holding in *Becker v. Sunset City*, 2009 UT App 197, 216 P.3d 367. In *Becker*, a discharged employee who had appealed his termination to the appeal board of his city complained that he did not receive notice of his hearing date early enough to adequately prepare. *See id.* ¶¶ 4–5. We held that because the statute allows the employee the opportunity to appeal and examine the evidence at a hearing, the employee must necessarily have sufficient opportunity to prepare for that hearing. *See id.* ¶¶ 6–8. This analysis in *Becker* was based on section 10-3-1106, but it reflects due process underpinnings, including the importance of providing notice to an employee of the reasons for his termination prior to a formal hearing reviewing that decision. *See id.* ¶ 8. In proceedings like the instant one, where a government employee is subject to a hearing before a board that considers evidence and provides an opportunity to rebut that evidence, fairness requires that the employee be given appropriate notice of the charges that he will be expected to refute or explain.[4]

¶18    Additionally, the United States Supreme Court has held that where an employee has a property interest in his job, as Fierro undeniably has, *see id.* ¶ 6, he cannot be

---

[4]The need for formal notice of the reasons for discharge is reinforced in *Ogden City v. Harmon*, 2005 UT App 274, 116 P.3d 973, where we held that a municipality's appeal board "is under an obligation to address each of the grounds for termination" listed by the department. *Id.* ¶ 14. It is difficult to see how such a requirement could be met in the absence of a notice of termination or other document listing the specific reasons for termination.

deprived of his job "except pursuant to constitutionally adequate procedures." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541 (1985). Among these adequate procedures is "notice." *See id.* In explaining this requirement, the Court referred to *Arnett v. Kennedy*, 416 U.S. 134 (1974), where it had held that an employee had received constitutionally adequate procedures because he "had access to the material upon which the charge was based and could respond orally and in writing and present rebuttal affidavits." *Loudermill*, 470 U.S. at 542.

¶19    Consistent with this Supreme Court jurisprudence, Fierro was entitled to an adequate opportunity to prepare for the hearing that would resolve his appeal. In no other way could his due process right to meaningfully contest the specific charges against him be realized. Thus, Park City was required to provide Fierro with an explanation of its decision to terminate him so that Fierro could adequately respond when the Appeal Board reviewed the decision. Park City met its obligation to provide Fierro with proper notice via the Termination Memo, which was the only document that the city provided to Fierro regarding the reasons for his termination.[5]

¶20    Specific notice is particularly important in cases like this one where, procedurally, time works against the employee who is appealing the decision. Fierro had only ten days to appeal the termination decision after he received the Termination Memo. *See* Utah Code Ann. § 10-3-1106(3)(a)(i) (2007). From that point, the Appeal Board was statutorily required to make its decision within fifteen days of Fierro filing his appeal. *See id.* § 10-3-1106(5)(a)(i). In *Becker*, we recognized the frantic position this short timeframe creates for an aggrieved employee, and we noted the even greater need for the appellant to have proper notice for this reason. *See* 2009 UT App 197, ¶ 8. Particularly because Park City had all the time it wanted to conduct as thorough an investigation as it desired prior to terminating Fierro, the need to provide him with a concise, comprehendible notice of the reasons for termination becomes manifest.

---

[5]At oral argument before this court, counsel for Park City argued that there were other documents that more thoroughly explained the reasons for Fierro's termination, but when asked whether any of these were provided to Fierro, counsel conceded that they were not.

III. The Appeal Board Was Required to Consider Only Evidence that Fell Within the Scope of the Termination Memo.

¶21    Park City argues that the Appeal Board should not be bound by the four corners of the Termination Memo, which, it contends, was never intended to be an exhaustive list of the reasons for Fierro's termination.  Again, section 10-3-1106 sheds some light on the implicit limitations under which the Appeal Board was allowed to consider evidence in evaluating the grounds for Fierro's termination.  *See* Utah Code Ann. § 10-3-1106.  Subsection (3)(b)(ii) allows the Appeal Board to hear only evidence "which *relates to the cause for the discharge*."  *Id.* § 10-3-1106(3)(b)(ii) (emphasis added).  The statute also requires each municipality to establish, by ordinance, "the procedure for conducting an appeal." *Id.* § 10-3-1106(7)(a).  In its Administrative Rules of the Employee Transfer and Discharge Appeal Board, Park City mirrors the language of section 10-3-1106, limiting the board to consideration of evidence "which relates to the cause for the discharge" and granting the employee the right "to appear in person and to be represented by counsel, to have a public hearing, to confront the witness[es] whose testimony is to be considered, and to examine the evidence to be considered by the Appeal Board."  The Appeal Board is not given the authority by statute or by Park City's own protocol for managing the appeal process to also consider other evidence concerning acts that do not "relate[] to the cause for the discharge."

¶22    In our view, the language of the statute limiting the Appeal Board to considering only evidence "which relates to the cause for the discharge" imposes a requirement that the Appeal Board consider just those instances of misconduct that the police department identified as the grounds for terminating Fierro and of which Fierro had been given prior notice via the Termination Memo.  The Termination Memo itemized the reasons "for the discharge," and the Appeal Board was thus restricted to considering evidence "which relate[d] to" the charges the department expressly asserted.

¶23    This requirement also best meets Fierro's reasonable expectations.  The Termination Memo listed specific charges against Fierro, justifying, in the department's view, his termination.  It was therefore entirely reasonable for Fierro to view the Termination Memo as an official and complete accounting of the department's complaints against him.  This conclusion is reinforced by the Termination Memo's intentional formality.  This was not a simple email or hand-written note communicating

generalities. The format, tone, and manner in which the memo was presented to Fierro conveyed an air of precision, formality, and finality. The Termination Memo was prepared on departmental letterhead and purported to be a summary of a thorough investigation. It was the only communication provided to Fierro explaining the reasons for his discharge. The Termination Memo concluded with the direct order for Fierro to be "terminated effective immediately."

¶24 Park City argues in its brief that "nothing . . . would indicate, in any way, that these documents provided to Fierro would somehow create an exhaustive evaluation of all grounds for dismissal." But the document itself purports to be "the summary findings, conclusions and dispositions for the allegation(s) made which initiated this investigation" which, in the department's own words as used in the Termination Memo, was "complete, thorough, and conclusive." The language used in laying out the "thoroughly reviewed" points, which are "summarize[d]" in the document, would reasonably give Fierro the impression that the Termination Memo set forth an exhaustive list of reasons for his termination. There was nothing in the department's communication with Fierro prior to the initial hearing before the Appeal Board that should have suggested to him that there were other factors that would also be considered by the Appeal Board.[6]

IV. The Appeal Board Considered Matters that Exceeded the Scope of the Termination Memo.

¶25 Park City argues that even if it was bound by the four corners of the Termination Memo, the Appeal Board's findings bear a sufficient nexus to the charges set forth in the Termination Memo. However, several of the findings of the Appeal Board identified different acts of misconduct than those charged in the Termination Memo. The most obvious of these is the Appeal Board's finding that Fierro had arranged for a long

---

[6]There is a reference in the Termination Memo that indicates there was a more thoroughly detailed document explaining the reasons for termination, called the "investigative report." However, there is no reason to believe this document contained allegations of *additional* misconduct, as opposed to a more detailed account of the instances of misconduct identified in the Termination Memo. And in any event, the existence of this report and the facts that it contained have no bearing on our analysis because a copy was not furnished to Fierro and he apparently had no access to it.

distance call block on his phone to be removed without authorization, an act that is not even loosely connected with any of the five specific grounds for termination stated in the Termination Memo.

¶26    Additionally, several of the findings associated with Fierro's involvement in the sex abuse case were also different from the asserted charges of misconduct listed in the Termination Memo.  The Termination Memo only alleged that Fierro had misled his supervisors about his communication with the investigating officer regarding the sex abuse case; had used his authority as a police officer to gain access to the suspect for unofficial reasons; and had disclosed information regarding the case to a third party, about which he then lied.

¶27    In affirming, the Appeal Board included in its findings that Fierro had improperly used his authority as a police officer to gain access to the suspect.  This indeed was one of the points set out in the Termination Memo.  However, the Appeal Board also purported to uphold the termination because of evidence that Fierro was involved in the case despite a conflict of interest; that he communicated with the suspect about the crime; that he disclosed information to investigators that he had received from the suspect; and that he attempted to influence the investigation by making statements to investigators.  While these findings were related to the sex abuse case mentioned in the Termination Memo, they are different acts of misconduct than those alleged in the Termination Memo.  Thus, with the exception of one of the points listed by the Appeal Board as grounds for affirming the termination decision, i.e., misuse of authority to gain access to the jailed suspect, none of the points it relied on related to the reasons for termination listed by the Park City Police Department in the Termination Memo.

¶28    The allegations in the Termination Memo were very precise, noting the exact actions that led to Fierro's termination, right down to the statements he made and the names of individuals with whom he interacted.  Specific department rules were cited for each of these alleged acts of misconduct as well.  Given this level of detail, the Appeal Board clearly strayed from considering the charges contained in the

Termination Memo and engaged in a more free-wheeling review of Fierro's performance.[7]  It follows that the Appeal Board's decision must be set aside.

### V. The Appeal Board May Consider Whether Fierro's Misuse of Authority Was, by Itself, Sufficient Grounds for Termination.

¶29    Fierro contends that if the Appeal Board were to consider only its findings that correlate with allegations in the Termination Memo, his termination would not be supported by substantial evidence and thus must be vacated.  Park City contends that the Appeal Board's decision should be upheld even if the acts of misconduct specified in the Termination Memo circumscribed the Appeal Board's authority.  As previously stated, the only finding of the Appeal Board concerning an act of misconduct that was also alleged in the Termination Memo was the finding that Fierro used his authority as a police officer to gain access to a jailed suspect for church purposes rather than police purposes.

¶30    We are persuaded that the appropriate course under all the circumstances is to set the decision of the Appeal Board aside but permit the board an opportunity to consider whether the one ground that fell within the scope of the Termination Memo, and which the board sustained, was sufficient to warrant Fierro's termination.  *See generally Becker v. Sunset City*, 2009 UT App 197, ¶ 11, 216 P.3d 367 ("set[ting] aside" an appeal board's decision affirming an employee's termination and "direct[ing it] to hold a new hearing" because of due process violations that occurred during the previous hearing); *Ogden City Corp. v. Harmon*, 2005 UT App 274, ¶ 19, 116 P.3d 973 (directing the

---

[7]At oral argument, counsel for Park City argued that Fierro had actual notice that many of the factors and evidence the Appeal Board considered would be dealt with because of his opportunity for a "dry run" at the first hearing.  This contention is problematic for two reasons.  First, because there is no record of the first hearing, we have no way of verifying what evidence was presented there and, therefore, have no way of verifying which allegations were discussed and what evidence was admitted at that time.  Additionally, it would be fundamentally unfair to allow the city to go beyond the bounds established by the Termination Memo during the second hearing, when it could not have legally done so at the first hearing, because of its own mistake in failing to create a record of the first hearing.

appeal board to consider one of the department's reasons for an employee's termination that the board had not previously considered).

CONCLUSION

¶31  The statute that establishes an appeal process for a terminated municipal employee contemplates that the employee be given formal notice of the reasons for his termination.  Further, due process requires that a governmental agency provide notice to a terminated employee of the reasons for termination.  Such notice is critical to the employee having an opportunity to effectively appeal the termination decision.  Additionally, any statutorily-authorized appeal board reviewing an agency's termination decision must consider only those allegations formally communicated to the employee in the termination documentation provided to the employee.

¶32  We set the Appeal Board's decision aside, with leave to consider whether the one ground that fell within the scope of the Termination Memo, and which the Board sustained, i.e., that Fierro misused his police credentials to gain access to a jailed suspect for church purposes, was sufficient to warrant Fierro's termination.

_____
Gregory K. Orme, Judge

-----

¶33   WE CONCUR:

_____
James Z. Davis, Judge

_____
J. Frederic Voros Jr., Judge