2014 UT App 71

**Michael FIERRO, Petitioner**

v.

**PARK CITY MUNICIPAL CORPORATION and Park City Employee Transfer and Discharge Appeal Board, Respondents.**

No. 20121037–CA.

Court of Appeals of Utah.

March 27, 2014.

Ryan B. Hancey, Salt Lake City, Attorney for Petitioner.

Thomas A. Daley, Kerry A. Gaines, and Tricia Lake, Attorneys for Respondents.

Judge GREGORY K. ORME authored this Memorandum Decision, in which Judges JAMES Z. DAVIS and J. FREDERIC VOROS JR. concurred.

Memorandum Decision

ORME, Judge:

¶ 1 Michael Fierro challenges the decision of the Park City Employee Transfer and Discharge Appeal Board that the Park City Police Department had sufficient grounds for terminating his employment. The challenge is well taken, and we set the decision aside.

¶ 2 This case arises out of Fierro's termination from the police department for misconduct. In October 2009, Fierro received a notice and memorandum (the Termination Memo) that documented the termination of his employment with the police department and specified the grounds for termination. The Termination Memo identified five reasons for Fierro's termination. Fierro appealed, and the Appeal Board upheld the termination in December 2010. Fierro then sought our review of the Appeal Board's decision. *See Fierro v. Park City Mun. Corp. (Fierro I)*, 2012 UT App 304, ¶ 8, 295 P.3d 696.

¶ 3 We considered only one issue in reviewing the Appeal Board's December 2010 decision, namely, whether "the Appeal Board exceeded its authority and violated Fierro's due process rights in considering evidence unrelated to the charges specified in the Termination Memo." *Id.* We held that the Appeal Board was only permitted to consider evidence " '*which relates to the cause for the discharge,*' " *id.* ¶ 14 (emphasis in original) (quoting Utah Code Ann. § 10–3–1106(3)(b)(ii) (2007)), and that the Appeal Board thus exceeded its authority in considering different acts of misconduct than those specified in the Termination Memo, *id.* ¶¶ 27–28. Accordingly, in *Fierro I* we set the Appeal Board's decision aside, but granted it "leave to consider whether the one ground that fell within the scope of the Termination Memo, and which the Board sustained, ... was sufficient to warrant Fierro's termination." *Id.* ¶ 32. That one ground was Fierro's misuse of "his police credentials to gain access to a jailed suspect for church purposes." *Id.*

¶ 4 The facts surrounding this episode center around a jail visit Fierro made in August 2009. "Fierro, who served as a lay leader in his church,[1] became aware that one of his parishioners was the suspect in [a] child sex abuse case," *id.* ¶ 3 n. 2, which was being investigated by the police department.[2] Fierro then visited this parishioner in the Summit County Jail.

¶ 5 In arranging his jailhouse visit, Fierro called the Summit County Jail commander and asked if the commander would allow Fierro to visit one of his parishioners who was incarcerated and having a hard time. The commander checked with his duty sergeant and determined that the jail could accommodate the request. During his visit, Fierro was given some special accommodations, such as after-hours access, entry through a door that was typically used only by police officers, and the use of a private visitation room—although the jail's duty sergeant noted that it is common for clergy to be granted their requests for private visitation rooms.

¶ 6 We set aside the Appeal Board's initial determination, which was premised on multiple instances of misconduct that were not mentioned in the Termination Memo. At the same time, we granted the Appeal Board the opportunity to consider whether the circumstances of the jail visit, a subject properly disclosed in the Termination Memo, warranted termination standing alone. *See id.* ¶ 32.

---

1. Fierro was the president of a small local congregation, called a branch, of the Church of Jesus Christ of Latter-day Saints.

2. While not mentioned in *Fierro I*, Fierro "became aware that one of his parishioners was a suspect" because Fierro met with the victim's family and did the initial intake work on their complaint when they presented themselves at the police station.

The Appeal Board accepted this invitation and again reviewed the police department's decision to terminate Fierro. The Appeal Board understood its limited assignment, noting in the opening paragraph of its decision: "The court gave the Board leave to reconsider one issue: whether Officer Fierro misused his police credentials to gain access to a jailed suspect for church purposes and whether that was sufficient to warrant Fierro's termination."

¶ 7 Upon further review, the Appeal Board found that "Fierro's own testimony and other evidence in the record" demonstrated "that Fierro went to the jail in his role as a clergyman but did not reveal that to the jail." Additionally, it found that "when Fierro called [the commander] at the jail about accessing the suspect, he did not tell [the commander] the purpose of his visit" and that the commander "only knew after the visit that Fierro was there as a clergyman." The Appeal Board also noted that Fierro's "misuse of his credentials and his knowing failure to identify that the purpose of his visit was as a clergyman, rather than as a police officer, was dishonest." Based on these findings, the Appeal Board determined that Fierro "misused his police credentials to gain access to a jailed suspect for church purposes, and that this was sufficient to warrant termination."

 ¶ 8 Fierro seeks judicial review of this decision. He argues that the Appeal Board's findings are not supported by substantial evidence. *See Rosen v. Saratoga Springs City,* 2012 UT App 291, ¶ 8, 288 P.3d 606. " 'Substantial evidence is that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion. It is more than a mere "scintilla" of evidence and something less than the weight of the evidence.' " *Id.* ¶ 9 (quoting *Lucas v. Murray City Civil Serv. Comm'n,* 949 P.2d 746, 758 (Utah Ct.App.1997)).

 ¶ 9 Based on our examination of the record before us, we must conclude that the Appeal Board's finding that Fierro lied about the purpose of his visit is not supported by substantial evidence. In fact, we can find no evidence in the record to support the Appeal Board's key finding. Rather, all relevant evidence presented to the Appeal Board indicates that Fierro fully disclosed that he was visiting the jail in his role as a member of his church's lay clergy.[3]

¶ 10 In support of its finding that Fierro lied about the purpose of his jailhouse visit, the Appeal Board explicitly relied on "Fierro's own testimony" before the Appeal Board and "other evidence" outlined in the Termination Memo. But this evidence does not support the Appeal Board's finding. We can find no place in Fierro's own testimony where he testifies that he did not disclose the purpose of his visit to the jail commander. Fierro testified that he "was going to visit [the suspect] in the capacity of a clergyman." Additionally, the Termination Memo says nothing about Fierro's alleged failure to disclose that he was visiting the jail in his ecclesiastical role. Finally, the Appeal Board also refers to an email that Fierro sent to the jail commander on the day after the jailhouse visit, thanking the jail commander for facilitating the visit. However, contrary to the Appeal Board's inference, nothing in the email suggests that Fierro was revealing the purpose of his visit for the first time, and the jail commander's own account of the visit indicates that he knew the purpose of the visit from the outset.[4]

¶ 11 In contrast to the lack of evidence supporting the Appeal Board's findings, there is ample evidence that Fierro fully disclosed his ecclesiastical role when he visited the jail. As part of an internal affairs investigation that preceded Fierro's termination, both Fierro and the jail commander were interviewed. Fierro told the internal

---

3. Whether his doing so was a good idea is, of course, a different matter. Having processed the original complaint made by the victim's family at the police station, he nevertheless involved himself in an ecclesiastical role with the suspect. And knowing the suspect as a member of his church congregation, he failed to enlist another detective to take the family's complaint. But his mishandling of this apparent conflict of interest was not a ground for termination alleged in the Termination Memo.

4. Fierro's dual capacities as a law enforcement officer and a church official did make the jail commander uncomfortable. He made and retained notes outlining his concerns.

affairs investigator that he "represented himself as clergy when he requested the visit." And the jail commander told the investigator that "Fierro went to the jail, functioning as a Branch President." *See supra* note 1. The police department then asked an outside investigator to conduct an inquiry into Fierro's conduct. The jail commander told this investigator that Fierro "asked him to allow Fierro to visit with one of his LDS branch members who was incarcerated and having a hard time." Similarly, Fierro told the outside investigator that "he identified himself as [the suspect's] branch president and requested a face to face meeting with him." The Termination Memo itself seems fully consistent with this version of events, noting that "Fierro contacted [the jail commander] for special permission to meet with one of his parishioners in a private room." Additionally, when Fierro's police chief, who made the initial decision to terminate Fierro's employment, testified before the Appeal Board, he stated that Fierro "had a private conversation in the jail, and he had disclosed—he was there as clergy." Finally, the city's attorney seemed to recognize that this was an undisputed fact and conceded as much in her closing arguments before the Appeal Board: "I want to be clear we're not taking issue with the fact that he was working as a clergy or that in his capacity he would go visit the suspect in jail."

¶ 12 The City contends that regardless of whether Fierro represented himself as being on church business when he visited the jail, "it was the indicia of authority and the exploitation of this authority as a law enforcement officer for a non-law enforcement purpose which brought discredit to the Park City Police Department, and which formed the basis for Fierro's termination." While it may be true that the Appeal Board used the term "credentials" in the broad sense of the term, meaning police authority or position, the Appeal Board's ultimate conclusion that Fierro misused his credentials turned almost exclusively on its very specific finding that Fierro lied about the purpose of his jailhouse visit. This conclusion is simply not supported by the evidence, much less by substantial evidence. The Appeal Board's resulting decision is necessarily arbitrary and capricious, and thus constitutes an abuse of its discretion. *See Rosen v. Saratoga Springs City*, 2012 UT App 291, ¶ 19, 288 P.3d 606; *Lucas v. Murray City Civil Serv. Comm'n*, 949 P.2d 746, 755 n. 5 (Utah Ct. App.1997). *See also* Utah Code Ann. § 10–3–1106(6)(c)(ii) (LexisNexis 2012) (stating that we review the decision of an Appeal Board "for the purpose of determining if the appeal board ... abused its discretion or exceeded its authority").

¶ 13 Given the lack of substantial evidence to support its pivotal finding, we must set the Appeal Board's decision affirming Fierro's termination aside. The remedies to which Fierro is entitled are prescribed by statute. *See* Utah Code Ann. § 10–3–1106(5)(b); *Lucas*, 949 P.2d at 763.