**2016 UT App 122**

# THE UTAH COURT OF APPEALS

SALT LAKE CITY CORPORATION,
Petitioner,
*v.*
THOMAS GALLEGOS AND SALT LAKE CITY
CIVIL SERVICE COMMISSION,
Respondents.

Opinion
No. 20140271-CA
Filed June 3, 2016

Original Proceeding in this Court

J. Elizabeth Haws and Samantha J. Slark, Attorneys
for Petitioner

Edward K. Brass, Attorney for Respondent
Thomas Gallegos

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGE STEPHEN L. ROTH and JUSTICE JOHN A. PEARCE
concurred.[1]

CHRISTIANSEN, Judge:

¶1     Salt Lake City Corporation (the City) petitions for judicial
review of the Salt Lake City Civil Service Commission's (the
Commission) decision reversing the termination of Officer
Thomas Gallegos's employment with the Salt Lake City Police
Department (the Department). Because the Commission applied

---

1. Justice John A. Pearce began his work on this case as a
member of the Utah Court of Appeals. He became a member of
the Utah Supreme Court thereafter and completed his work on
the case sitting by special assignment as authorized by law. *See
generally* Utah R. Jud. Admin. 3-108(3).

an incorrect legal standard, we set aside the resulting decision, and direct the Commission to reconsider the matter.

BACKGROUND

¶2     Between 2009 and 2012, Gallegos served as President of the Salt Lake Police Association (SLPA) and as a board member of the International Union of Police Associations (IUPA). Gallegos attended annual IUPA board meetings. Gallegos paid for meals and travel expenses for these trips with an SLPA credit card. For these same events, Gallegos received a per diem from IUPA and for one event was reimbursed by IUPA for an airfare that Gallegos had purchased with SLPA funds. Gallegos did not reimburse SLPA for his use of SLPA funds to pay for meal and travel expenses for which Gallegos had received a per diem or been reimbursed by IUPA.

¶3     Responding to complaints made by other officers, the Department's police chief initiated an internal-affairs investigation of Gallegos. That investigation determined that Gallegos had paid for IUPA board-meeting travel expenses with SLPA funds while also receiving reimbursement from IUPA for these same expenses, but had never reimbursed SLPA for the double payment. After a pre-disciplinary hearing and a Civilian Review Board investigation, the police chief terminated Gallegos's employment. The police chief found that Gallegos had "knowingly received and processed instruments of payment from IUPA" and "kept the funds for [his] personal use and made no attempt to reimburse the SLPA for its expenditures." The police chief found that, under the circumstances, Gallegos could not "plausibly deny knowledge of wrongdoing and therefore committed a theft." The police chief concluded that Gallegos's conduct constituted a violation of three of the Department's policies: "Obligation to Abide by the Law," "Conduct Unbecoming," and "Core Values—Integrity." The police chief also determined that Gallegos's conduct justified his termination.

¶4    Gallegos appealed to the Commission, which held an evidentiary hearing on the matter. Gallegos asserted that he was unaware that any of the funds he received from IUPA were per diem payments or other funds that should be reimbursed to SLPA rather than stipends that he was entitled to keep for his attendance at IUPA board meetings.[2]

¶5    The Commission determined that each of the identified policy violations "was based on assertions that Officer Gallegos had committed a theft of property by seeking and receiving reimbursement from IUPA for expenses that SLPA had paid" and that he "'knowingly' receiv[ed] and ke[pt] for his personal use funds received from IUPA that should have been used to reimburse SLPA for expenses SLPA paid." The Commission therefore concluded that a "key element" of the Department's case was proving that Gallegos "intentionally and knowingly took money to which he was not entitled." Based on the evidence received at the hearing, the Commission determined that "[t]he record fails to establish that Officer Gallegos intentionally kept funds that he knew did not belong to him" and that the City "failed to establish that Officer Gallegos committed a theft." The Commission thus concluded that the Department had "failed to carry its burden of establishing that the facts and evidence support the charges leveled against Officer Gallegos." The Commission reversed the police chief's decision to terminate Gallegos and reinstated his employment. The City seeks review of the Commission's decision.

---

2. It appears that Gallegos's retention of the stipends for attendance at IUPA board meetings is uncontroversial. The retention of the stipends, which constitute approximately half of the money Gallegos received from IUPA, does not appear to form any part of the City's reasons for terminating Gallegos's employment.

ISSUES AND STANDARDS OF REVIEW

¶6     The City first argues that the Commission erred in requiring the City to put forth evidence that Gallegos had committed a theft to demonstrate that the facts supported the grounds for Gallegos' termination. The City next argues that the Commission applied the wrong standard of review in evaluating whether the record supported the police chief's findings. Last, the City argues that the Commission improperly excluded certain evidence.

¶7     We review the Commission's decision "for the purpose of determining if the [Commission] abused its discretion or exceeded its authority." Utah Code Ann. § 10-3-1106(6)(c)(ii) (LexisNexis 2015). We will conclude that the Commission abused its discretion if its decision "exceeds the bounds of reasonableness and rationality." *Rosen v. Saratoga Springs City*, 2012 UT App 291, ¶ 8, 288 P.3d 606 (citation and internal quotation marks omitted). We review the legal standards applied by the Commission for correctness. *See Taylorsville City v. Taylorsville City Emp. Appeal Board*, 2013 UT App 69, ¶ 16, 298 P.3d 1270 ("[W]hen reviewing the Board's interpretations of general questions of law, this court applies a correction-of-error standard, with no deference to the expertise of the Board." (brackets, citation, and internal quotation marks omitted)).

ANALYSIS

¶8     The Commission is empowered to "fully hear and determine" appeals from disciplinary decisions of the Department's police chief. Utah Code Ann. § 10-3-1012(2) (LexisNexis 2015). In reviewing disciplinary decisions, the Commission must determine whether "the facts support the charges made by the department head" and whether "the charges warrant the sanction imposed." *Ogden City Corp. v. Harmon*, 2005 UT App 274, ¶ 10, 116 P.3d 973 (citation and internal quotation marks omitted). In doing so, the

Commission must "give deference to a police chief's advantaged position" in evaluating disciplinary decisions, and, absent a city ordinance expressly rejecting this approach, the Commission must review the police chief's decision "for substantial evidence with respect to findings of fact and abuse of discretion with respect to the discipline selected." *Taylorsville City v. Taylorsville City Emp. Appeal Board*, 2013 UT App 69, ¶ 29, 298 P.3d 1270; *accord* Salt Lake City Civil Service Comm'n Rules & Regulations 6-4-5(10), http://www.slcdocs.com/hr/rulesregulationsaugust2012.pdf [https://perma.cc/8YH2-A84K] (providing that a "substantial evidence" standard applies to all hearings before the Commission). In short, the Commission's review is limited to considering whether substantial evidence exists to support the police chief's decision.

## I. The Commission Did Not Err in Requiring the City to Provide Evidence of the Charged Theft.

¶9　The City first challenges the Commission's determination that, to properly support the police chief's termination decision, the City needed to put forth evidence that Gallegos had committed a theft—that he "intentionally and knowingly took money to which he was not entitled." The City argues that, under the plain language of the relevant Department policies, no criminal intent or violation of the law needed to be proven to support the grounds for termination.

¶10　We agree with the City that, facially, at least two of the relevant policies do not require a showing of criminal intent or conduct.[3] The Conduct Unbecoming policy states,

---

3. The City does not discuss the language or requirements of the third policy implicated in Gallegos's termination: Obligation to Abide by the Law. Accordingly, we limit our analysis to the policies the City has addressed on appeal.

> Conduct unbecoming by a police employee is any conduct that has a tendency to adversely affect the operations or efficiency of the Department or *any conduct that has a tendency to adversely affect public respect and confidence in the Department or any employee.* Conduct unbecoming also includes any conduct that brings the Department or any employee into disrepute or brings discredit upon the Department or any employee.

(Emphasis added.) And the "Core Values—Integrity" policy states,

> The Public demands that the integrity of police officers be above reproach. Police officers must avoid any conduct that may compromise integrity and thus undercut the public confidence.

We agree that, in isolation, these policies do not necessarily require proof that an officer acted criminally or engaged in knowing or intentional misconduct.

¶11    However, the Commission is not charged with evaluating the Department's policies in a vacuum to determine if an officer engaged in conduct that violated those policies. Rather, the Commission's review is limited by the scope of the termination notice; put another way, the Commission may consider only the misconduct identified in the notice as the basis for the termination decision. *Fierro v. Park City Mun. Corp.*, 2012 UT App 304, ¶ 22, 295 P.3d 696. This "four corners of the termination notice" limitation is imposed on the Commission's review because police officers "have a due process right to adequate notice of the reasons for their discharge so that they can meaningfully prepare for and participate in the municipal appeal board hearing." *Becker v. Sunset City*, 2013 UT 51, ¶ 15, 309 P.3d 223 (citing *Fierro*, 2012 UT App 304, ¶¶ 18–19). Thus, the termination notice must give an employee "clear notice of the allegations he should be prepared to address" so that the

employee has an adequate opportunity to prepare a defense to the allegations. *Fierro*, 2012 UT App 304, ¶ 16. The Commission's review is therefore limited to the "specific grounds for termination" contained in the termination notice, and we must set aside the Commission's decision if it "stray[s] from considering the charges contained in the [termination notice]." *Id.* ¶¶ 25, 28. "We may not side-step this due process limitation in determining whether a municipal appeal board's decision is supported by substantial evidence." *Becker*, 2013 UT 51, ¶ 15.

¶12     Here, the specific grounds for termination identified by the police chief in the termination notice were that Gallegos "knowingly received and processed instruments of payment from IUPA" and "kept the funds for [his] personal use and made no attempt to reimburse the SLPA." The police chief found that Gallegos could not "plausibly deny knowledge of wrongdoing and therefore committed a theft." Given these specific allegations, we cannot agree with the City that the Commission erred in requiring the City to put forward evidence that Gallegos "intentionally and knowingly took money to which he was not entitled" and thereby committed a theft. Because the police chief framed the allegations against Gallegos as a theft, the Commission's review was limited to the question of whether there was evidence to support a finding that Gallegos had committed a theft. *See Fierro*, 2012 UT App 304, ¶ 18.[4]

---

4. Our conclusion on this issue also resolves the City's claim that the Commission improperly considered Gallegos's intent or knowledge in evaluating whether the facts support the charges alleged in the termination notice. We conclude that the Commission's consideration of Gallegos's mental state was necessary to evaluate the allegation that Gallegos had engaged in a knowing theft. The City asserts that an employee's mental state may be considered only in evaluating the degree of discipline imposed. The City's reliance on *Ogden City Corp. v. Harmon* for this proposition is misplaced. 2005 UT App 274, 116 P.3d 973. In *Harmon*, this court ruled that the question of

(continued…)

¶13    Indeed, to accept the City's argument in this case would allow the City to support Gallegos's termination with evidence of merely accidental or negligent mishandling of money—or, in fact, any other terminable misconduct in any departmental policy—which is a very different allegation from the knowing theft identified by the police chief as the basis for Gallegos's termination. But Gallegos was entitled to "clear notice" of the allegations that he would be required to address and defend against. *Id.* ¶ 16. Because the police chief identified a knowing theft of funds as the basis for Gallegos's termination, Gallegos was entitled to rely on that notice and prepare a defense to the specific allegation of theft. The City cannot now attempt to justify Gallegos's termination on the basis of different, less culpable conduct than that identified in the termination notice. To do so would be to move the goalposts while the ball is in the air.

## II. The Commission Applied the Wrong Standard of Review.

¶14    Next, the City argues that the Commission applied the wrong standard of review when it concluded that "[t]here is

---

(…continued)
whether conduct was "common and consensual" had no place in evaluating whether the facts supported the charges alleged. *Id.* ¶ 12. But that question is different from whether the employee's knowledge or intent could be considered in that context—a question the *Harmon* court did not address. Thus, contrary to the City's assertion in its brief, this court did not hold in *Harmon* that "the employee's intent . . . should only be considered in that it may affect the degree of discipline imposed." (Citation and internal quotation marks omitted.) While we observed that consideration of the employee's mental state was likely appropriate in evaluating the proportionality of the discipline, nothing in *Harmon* limits the Commission's consideration of the employee's mental state to only the proportionality analysis. *Id.* ¶ 18.

substantial and sufficient evidence in the record for the Commission to conclude that Officer Gallegos made, at most, an honest and genuine mistake regarding his acceptance of the funds in question." We agree that the Commission applied the wrong standard of review on this issue. The question before the Commission was not whether there was substantial evidence to justify exonerating Gallegos, but rather, whether there was substantial evidence in the record to support the police chief's conclusion that Gallegos engaged in the conduct for which he was terminated.

¶15   In reviewing a termination decision, the Commission must "give deference to a police chief's advantaged position" in evaluating disciplinary decisions and must review the police chief's decision for "substantial evidence with respect to findings of fact and abuse of discretion with respect to the discipline selected." *Taylorsville City v. Taylorsville City Emp. Appeal Board*, 2013 UT App 69, ¶ 29, 298 P.3d 1270; *accord* Salt Lake City Civil Service Comm'n Rules & Regulations 6-4-5(10) (providing that a "substantial evidence" standard applies to all hearings before the Commission). In conducting a substantial evidence review, the Commission must determine whether the evidence supports the police chief's findings, not whether there is evidence in the record that would support a contrary finding. We therefore conclude that the Commission erred by evaluating whether the evidence supported a finding that Gallegos made "at most, an honest and genuine mistake."

¶16   We will set aside the Commission's decision only if there is a reasonable likelihood that the error affected the outcome of the proceedings. *See Lucas v. Murray City Civil Serv. Comm'n*, 949 P.2d 746, 755 (Utah Ct. App. 1997). Because the Commission did not review the actual grounds for the police chief's termination decision, we must consider whether substantial evidence supported the police chief's conclusion that Gallegos committed theft. *Taylorsville City*, 2013 UT App 69, ¶ 29. Substantial evidence is a "quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a

conclusion." *Kennon v. Air Quality Board*, 2009 UT 77, ¶ 28, 270 P.3d 417 (citation and internal quotation marks omitted). "It is more than a mere 'scintilla' of evidence and something less than the weight of the evidence." *Rosen v. Saratoga Springs City*, 2012 UT App 291, ¶ 9, 288 P.3d 606 (citation and additional internal quotation marks omitted). The City bears the burden of proof to demonstrate that the facts support the charges against the officer. *See* Salt Lake City Civil Service Comm'n Rules & Regulations 6-4-5(4).

¶17 We agree with the City that there is evidence to support the allegation that Gallegos received payments from IUPA that included per diems and travel reimbursement that should have been reimbursed to SLPA: Gallegos used an SLPA credit card to pay for his travel to and meals at IUPA board meetings. IUPA paid Gallegos a $400 stipend for attending each board meeting. IUPA also paid Gallegos a per diem of $49 to $71 per day he attended each board meeting, totaling $1,103 in per diem payments for five board meetings between October 2009 and February 2012. IUPA also provided Gallegos with a form to obtain reimbursement for his airfare, which IUPA typically paid directly to SLPA. On one occasion, although Gallegos requested the reimbursement be made payable to SLPA, the reimbursement check was made payable to Gallegos personally and was sent directly to him.

¶18 Here, the evidence presented below appears to be sufficient to show that Gallegos received funds that should have been reimbursed to SLPA. But the question before us is whether a factfinder could reasonably infer from the evidence that Gallegos committed a theft by *intentionally* retaining funds he *knew* he was not entitled to. "A person commits theft if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof." Utah Code Ann. § 76-6-404 (LexisNexis 2008). The City directs us to evidence which it contends support such a finding. Specifically, Gallegos testified that he knew he would be paid a $400 stipend for attending IUPA board meetings, but he received checks for more

than $400. Gallegos also testified that he did not inquire about the difference between his anticipated stipend and the amount of the checks. He also testified that the tax forms he received from IUPA showed less income than the amount he had received from IUPA. He further testified that he knew what the term "per diem" meant and that he had heard other officers at a board meeting use the term. Finally, the City points to the evidence that the airfare-reimbursement check that was mistakenly made payable to Gallegos rather than SLPA "was in the exact amount of the reimbursement he requested."

¶19    While the evidence presented to the Commission suggests that Gallegos might have known he was receiving money that did not belong to him, it is not this court's role to weigh the evidence to determine whether that evidence establishes that Gallegos *intentionally* retained those funds with the purpose of depriving SLPA of the money. *See* Utah Code Ann. § 76-6-404. Had the Commission applied the correct legal standard, it may have found this evidence sufficient to support the police chief's conclusion that Gallegos *knew* he was receiving money he was not authorized to have or that he retained it *with the purpose* of depriving SLPA of the money. *See id.* On the other hand, the Commission might have found this evidence insufficient to support such a finding. We therefore set aside the Commission's ruling and direct the Commission to revisit the matter for consideration of whether substantial evidence was presented to support the police chief's conclusion that Gallegos committed theft.

III. The Commission Did Not Err in Its Treatment of Evidence at the Hearing.

¶20    The City challenges the Commission's treatment of two pieces of evidence the City sought to introduce at the hearing. Since this case must be returned to the Commission for further consideration, we will address the evidentiary issues presented in this review. First, the City contends that the Commission improperly disregarded an exhibit and associated testimony that

purported to show that Gallegos knew he was receiving money from IUPA as a per diem that should have been reimbursed to SLPA. Second, the City contends that the Commission improperly excluded as irrelevant evidence that Gallegos was being prosecuted by the State for theft.

¶21 "[A]s a municipal administrative body, the Commission is not bound by formal rules of evidence and procedure." *Lucas v. Murray City Civil Service Comm'n*, 949 P.2d 746, 755 (Utah Ct. App. 1997). Rather, the Utah Rules of Evidence and Utah Rules of Civil Procedure are used as "guidelines" during Commission hearings but "are not strictly followed or applied." Salt Lake City Civil Service Commission Rules and Regulations 6-4-5(2) (2012). "In the absence of formal legal rules, the Commission must determine what evidence should, in fairness, be admitted." *Lucas*, 949 P.2d at 756 (citation and internal quotation marks omitted). "The evidence must be legally relevant, in that it has some probative weight and reliability." *Id.* (citation and internal quotation marks omitted).

A.    Per Diem Evidence

¶22 The City argues that the Commission improperly excluded evidence that Gallegos had been notified by IUPA that a portion of the money he received was a per diem that should have been reimbursed to SLPA. This evidence consists of a letter on IUPA letterhead addressed to Gallegos that provides a breakdown of the payment to Gallegos for an IUPA board meeting in September 2010—identifying the per diem amounts—and the testimony of the police officer who had obtained the letter from IUPA. The City argues that the Commission improperly excluded this evidence as hearsay, because this evidence "is the type of hearsay evidence [the Commission] has routinely accepted" and because no objection to the evidence was raised at the hearing.

¶23 We reject the City's argument because it does not appear that the Commission excluded the evidence in question. In

considering this evidence, the Commission observed that it was "based on the hearsay statement of a person who did not have personal knowledge of the facts in question." But nothing in the Commission's order suggests that it refused to consider the evidence. Rather, it appears that the Commission considered the evidence and determined that, because IUPA's treasurer lacked any knowledge that Gallegos had received the letter, the letter and testimony had little, if any, probative value in establishing that "Gallegos knew that the IUPA funds in question constituted a 'per diem.'"

¶24　The letter contains a breakdown of per diem and stipend payments for one board meeting, but nothing in the document itself demonstrates that it was ever given to Gallegos. The police officer who obtained the letter testified that he had received it from IUPA's treasurer. The officer testified that the IUPA treasurer told him "when the meeting attendees arrived at the meeting, each of them would be given a packet which contained . . . a check for the monies they were receiving, the breakdown sheet which showed the total amount broken down, and a reimbursement form should they need any further reimbursements."

¶25　Faced with this evidence, the Commission concluded that the IUPA treasurer lacked personal knowledge that Gallegos had ever received the letter containing the breakdown. The IUPA treasurer had not himself "sent the checks or the purported breakdowns to Officer Gallegos," and he could speak only to IUPA's general practice of giving meeting attendees a packet containing such material. Nothing in the letter or the IUPA treasurer's statements as relayed by the police officer at the hearing demonstrate that Gallegos was ever made aware by IUPA that a portion of the money paid to him constituted a per diem. Thus, based on our review of the Commission's order, we conclude that it properly considered the letter and associated testimony.

B.      Criminal-Prosecution Evidence

¶26     The City also challenges the Commission's exclusion of evidence that the State was pursuing a criminal case against Gallegos stemming from the conduct at issue in this case. The City attempted to present evidence that Gallegos had been charged criminally for his conduct. Gallegos objected, arguing that because the criminal charges arose after Gallegos had been terminated, they could not have formed the basis for any of the allegations against Gallegos and were therefore irrelevant. The Commission sustained the objection.

¶27     The City contends that the Commission erred in excluding the evidence as irrelevant. We disagree. The Commission may exclude evidence that is irrelevant. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Utah R. Evid. 401.

¶28     As discussed above, the Commission's review is limited to the specific grounds for termination identified in the termination notice. *Supra* ¶ 11. The City argues that "[e]vidence of the status of the criminal action against Officer Gallegos is relevant to show Officer Gallegos's conduct fell below that expected of a Salt Lake City police officer and violated the Department policies at issue." But Gallegos was not terminated for being charged with a crime. And while a criminal *conviction* may be relevant to showing that Gallegos engaged in a theft, the filing of a criminal charge under these circumstances constitutes no more than an additional allegation that Gallegos engaged in the conduct for which he was terminated. The Commission therefore properly excluded the evidence as irrelevant to the limited question before it.

¶29     We conclude that the Commission did not err in its handling of either the per diem evidence or the evidence that Gallegos had been charged with theft.

CONCLUSION

¶30    The Commission did not err in requiring the City to present evidence that Gallegos committed a theft, because the City based its termination of Gallegos on allegations of theft. However, the Commission applied the wrong standard of review to its analysis of the record evidence. The Commission did not err in its handling of the evidence presented by the City. We therefore vacate the Commission's decision and return the matter for further consideration under the correct standard of review.

———————