**2017 UT App 195**

# THE UTAH COURT OF APPEALS

RUSSEL AUGUSTUS,
Petitioner,

*v.*

VERNAL CITY AND VERNAL CITY APPEALS BOARD,
Respondents.

Opinion
No. 20160634-CA
Filed October 26, 2017

Original Proceeding in this Court

Christian A. Kesselring, Attorney for Petitioner

Michael D. Harrington, Attorney for Respondent
Vernal City

Dennis L. Judd, Attorney for Respondent Vernal City
Appeals Board

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
GREGORY K. ORME and DIANA HAGEN concurred.

TOOMEY, Judge:

¶1      Russel Augustus worked as an equipment operator for
Vernal City and was discharged after violating several City
policies. His conduct and the policies he violated were identified
in a termination memorandum. The Vernal City Appeals Board
upheld the City's decision to discharge Augustus. Augustus
seeks review of the Board's decision, arguing that the Board
violated his due process right to notice when it considered
conduct not set out in the City's termination memorandum. We
decline to disturb the Board's decision.

*January 21 Incident*

¶2    On the morning of January 21, 2016, Augustus's supervisor (Supervisor) instructed Augustus and a coworker (Coworker) to hang some banners on the west end of town. Augustus and Coworker traveled to the work site in a city-owned truck. Although Augustus and Coworker began their assignment on the west end, they later deviated from that assignment without authorization and went to the east end of town to a different work site, where another city employee was operating a large tractor loader. Augustus and Coworker claimed that they believed the loader was being operated in an unsafe manner, so Augustus, without any instruction from a supervisor that he do so, used his city-issued cell phone to take photographs and a video recording of it. The loader operator saw Augustus drive by "with his cell phone up to the window" and immediately reported it to Supervisor.

*January 25 Incident*

¶3    Four days later, during working hours, Supervisor twice called Augustus's city-issued cell phone to set up a meeting to discuss Augustus's January 21 behavior, but Augustus did not answer. About an hour later, Supervisor encountered Augustus. Supervisor explained that he wanted to meet with Augustus and asked him why he had not answered his phone earlier that morning. Augustus responded, "I haven't had my cell phone." The two met later that day.

¶4    At their meeting, Augustus explained, "My phone has been off all day . . . I haven't had my cell phone." When Supervisor asked Augustus whether he and Coworker drove to the east end of town and took photographs and a video recording of the loader, Augustus answered that he could not remember. Throughout the meeting, Augustus responded to Supervisor's questions in an evasive, dismissive, and disrespectful manner. Thirty minutes into the meeting, Augustus

announced he was leaving. Supervisor responded that Augustus was not free to leave and that, if he did, he could face disciplinary action. Augustus replied, "Have fun with that," and left.

¶5     Supervisor also met with Coworker, who admitted he and Augustus had gone to the east end of town and took photographs and a video recording of the loader without authorization. After meeting with Augustus and Coworker, Supervisor placed them both on paid vacation leave for approximately one week.

¶6     As Supervisor further investigated the violations, he discovered that on the morning of January 25, Augustus had made several phone calls from his city-issued cell phone and sent several text messages. This information supported Supervisor's suspicion that Augustus had lied about his phone being off and about not having his phone with him that morning.

*Notice of Pre-Disciplinary Hearing*

¶7     On January 29, the City Manager provided Augustus with a notice of a pre-disciplinary hearing (the Notice), outlining Augustus's conduct and identifying various violations of the City's Personnel Manual.

¶8     The Notice alleged Augustus committed three violations on January 21: "Inefficiency or inability to satisfactorily perform assigned duties"; "Misusing, destroying or damaging any City property"; and "Deliberately restricting output." The Notice explained that Augustus was inefficient because he did not follow instructions to place banners on the west end of town, that he misused City property by driving the City's truck to "a location without any legitimate purpose or direction," and that he deliberately restricted his and Coworker's output by spending time away from their assigned project.

¶9 The Notice further alleged Augustus violated the Personnel Manual's policy against dishonesty when he claimed in his January 25 meeting with Supervisor that he could not remember if he went to the east end of town and took photographs and a video recording of the loader.

¶10 The Notice also alleged Augustus violated the Personnel Manual's policy against insubordination when he left the meeting prematurely and against Supervisor's express directive.

¶11 Finally, the Notice alleged Augustus violated the City's cell phone use agreement and committed an act of dishonesty when he did not answer his city-issued cell phone the morning of his meeting with Supervisor and later claimed that his phone had been turned off.

*Termination Memorandum and Appeal to the Board*

¶12 After conducting a disciplinary hearing, the City Manager sent Augustus a "Notice of Disciplinary Action" (the Termination Memorandum). The Termination Memorandum outlined the same violations and conduct as the Notice had. The City Manager concluded the Termination Memorandum by explaining that, after considering Augustus's testimony at the pre-disciplinary hearing, the allegations were substantiated. Accordingly, the City Manager discharged Augustus.

¶13 Augustus appealed the City Manager's decision to the Board. After conducting a thorough hearing and making detailed findings, the Board upheld the City Manager's decision to discharge Augustus. Some of the Board's findings discussed information that was not specifically outlined in the Termination Memorandum. For example, the Board found (1) that Augustus's claimed reason for taking the photographs and a video recording of the loader—that he believed it was being operated in an unsafe manner—was not credible and (2) that

Augustus was driving while he took the photographs and the video recording, which was illegal and unsafe.

¶14 Augustus now seeks judicial review of the Board's decision. Augustus argues the Board violated his due process right to notice by considering certain conduct that was not included in the Termination Memorandum.[1] Due process challenges are questions of law, and "we give no deference to the agency's determination of what constitutes due process." *Fierro v. Park City Mun. Corp.*, 2012 UT App 304, ¶ 8, 295 P.3d 696 (brackets, citation, and internal quotation marks omitted).

¶15 When reviewing the termination of a municipal employee, Utah law allows a municipal appeals board to consider only evidence that "relates to the reason for the discharge." Utah Code Ann. § 10-3-1106(3)(b)(ii) (LexisNexis 2015). Under this provision, the Board may consider only evidence related to the violations outlined in the Termination Memorandum. *See Fierro*, 2012 UT App 304, ¶ 22.

¶16 In *Fierro*, we set aside the decision of an appeals board because only one of the five grounds on which the appeals board had based its decision to uphold an employee's termination from employment was outlined in the notice of termination. *See id.* ¶ 27. And although the other grounds were generally related, "they [were] different acts of misconduct." *Id.*

---

1. Augustus also argues Supervisor's decision to place him on paid vacation leave was a disciplinary decision not preceded by a pre-disciplinary hearing and thus violated his right to due process. We do not address this issue because it relates to Supervisor's decision to place Augustus on paid vacation leave, not the City Manager's decision to discharge Augustus, which forms the basis of this judicial review proceeding.

¶17    Augustus asserts that *Fierro* is analogous to the present case, and therefore we should set aside the Board's decision. But Augustus has not carried his burden of persuasion. *See CORA USA LLC v. Quick Change Artist LLC*, 2017 UT App 66, ¶ 6, 397 P.3d 759. Augustus's analysis on this point is limited to the following three sentences:

> Referring to the outline given above of the conduct raised in the Notice of Disciplinary Action, as compared to the conduct identified in the Appeals Board's decision, there are many, many more instances of misconduct identified there. While Mr. Augustus might have divined that even some of those instances might be at issue, that is not enough to satisfy the rule established under *Fierro* and related cases. Mr. Augustus was given no notice of the great majority of them.

In his analysis, Augustus does not identify any of the "many" instances of misconduct identified in the Board's findings that were not included in the Termination Memorandum, and we disagree that he "was not given notice of the great majority of them."[2] To the contrary, and unlike the situation in *Fierro*, most of the Board's findings relate specifically to the violations listed in the Termination Memorandum. And the misconduct not specifically listed—Augustus's incredible explanation for taking photographs and a video recording of the loader and the manner

---

2. In Augustus's statement of facts, he quotes portions of the Board's findings that were purportedly made "over and above the reasoning reflected in the [Termination Memorandum]." But the majority of these quoted findings concern misconduct specifically mentioned or directly related to misconduct outlined in the Termination Memorandum.

in which he took them—closely relates to the violations outlined in the Termination Memorandum.

¶18    We conclude the Board did not violate Augustus's due process right to notice, and we therefore do not disturb its decision to uphold his termination.

———————