2013 UT App 278

**Wade HUGOE, Petitioner,**

v.

**WOODS CROSS CITY and Woods Cross City Employee Appeal Board, Respondents.**

**No. 20120968–CA.**

Court of Appeals of Utah.

Nov. 21, 2013.

Gregory W. Stevens, Attorney for Petitioner Michael Z. Hayes and Todd J. Godfrey, Attorneys for Respondents.

JUDGE JAMES Z. DAVIS authored this Opinion, in which Judges J. FREDERIC VOROS JR. and MICHELE M. CHRISTIANSEN concurred.

### Opinion

DAVIS, Judge:

¶ 1 Wade Hugoe requests that we set aside the Woods Cross City Employee Appeal Board's (the Board) decision affirming Woods Cross City's (the City) termination of his employment with the Public Works De-partment. We set aside the Board's deci-sion.

### BACKGROUND

¶ 2 Hugoe was employed by the City as a master mechanic. On July 17, 2012, after having various confrontations with other em-ployees throughout the day regarding miss-ing tools, Hugoe stormed into the public works operations manager's office and told the operations manager, " 'You don't do any-thing around here and you can go fuck your-self and all of you can go fuck off.' " At the time of the incident, Hugoe was on probation for another incident involving a confrontation with the city administrator that had taken place in December 2011. He had also re-ceived a written reprimand in November 2011 for yelling at and using vulgar language toward a supervisor.

¶ 3 Approximately a week after the inci-dent, the City provided Hugoe with written notice of a pre-disciplinary hearing. Follow-ing the hearing, the city administrator decid-ed to terminate Hugoe's employment. In Hugoe's termination letter, the city adminis-trator explained that by using "vulgar and profane language in a threatening and insu-bordinate manner towards" the operations manager, Hugoe had failed to comply with instructions given in connection with his pro-bation that he " 'strive to be a productive, cooperative employee and to control any an-ger or harsh feelings that [he] may have.' " The letter did not mention the November 2011 incident as a basis for Hugoe's termi-nation.

¶ 4 Hugoe filed an appeal with the Board, in which he alleged that the notice of the pre-disciplinary hearing did not comply with due process requirements and that termination was a disproportionate and inconsistent sanc-tion for his behavior. The Board unanimous-ly affirmed the city administrator's decision, concluding that "the July 17, 2012 statements and actions of Mr. Hugoe, standing alone, were so grievous as to justify termination of employment."

### ISSUES AND STANDARDS OF REVIEW

¶ 5 Hugoe asserts that various pre- and post-disciplinary procedures failed to

comply with due process. "Questions regarding whether an administrative agency afforded a petitioner due process in its hearings are questions of law, which we review for correctness." *Terry v. Retirement Bd.,* 2007 UT App 87, ¶ 9, 157 P.3d 362 (citation and internal quotation marks omitted).

¶ 6 Hugoe also argues that termination was a disproportionate and inconsistent disciplinary action that was not justified by the circumstances. Our review of this question is limited to " 'determining if the appeal board abused its discretion or exceeded its authority.' " *Nelson v. Orem City, Dep't of Pub. Safety,* 2012 UT App 147, ¶¶ 15–16, 278 P.3d 1089 (quoting Utah Code Ann. § 10–3–1106(6)(c) (Supp.2011) (current version at *id.* (LexisNexis 2012))), *aff'd sub nom. Nelson v. City of Orem,* 2013 UT 53, 309 P.3d 237. "We will accordingly uphold the Board's affirmance of the City's decision to terminate [Hugoe] unless it exceeds the bounds of reasonableness and rationality." *See id.* ¶ 17 (citation and internal quotation marks omitted).

## ANALYSIS

### I. Due Process Concerns

¶ 7 Hugoe first alleges that he did not receive due process in the course of the pre- and post-disciplinary proceedings. Specifically, he argues that the City failed to comply with the notice requirements set forth in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), because the notice failed to identify specific allegations or to explain the City's evidence against him. He further contends that the Board inappropriately based its determination in part on the November 2011 incident, which was not a reason given for his termination in the termination letter. Finally, he asserts that his post-disciplinary hearing was not conducted by an impartial tribunal.

¶ 8 In *Loudermill,* the United States Supreme Court ruled that due process in the context of a pre-termination proceeding requires that the employee be given "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546; *accord Lucas v. Murray City Civil Serv. Comm'n,* 949 P.2d 746, 753 (Utah Ct.App.1997). The notice provided to Hugoe regarding the pre-disciplinary hearing informed him that discipline was being considered "as a result of incidents which, if substantiated, are in violation of City policy, including threatening, intimidating or interfering with fellow employees on the job, insubordination, misusing City property, and using vulgar language." Hugoe asserts that this notice was too vague to inform him of the actual allegation that was the basis for his ultimate termination—i.e., that on July 17, 2012, he "used vulgar and profane language in a threatening and insubordinate manner towards" the operations manager while on probation for another confrontation—and that the notice failed to inform him of the evidence that would be used against him at the hearing.

¶ 9 Although the notice does not specifically reference the July 17 incident or identify the specific evidence that would be used against him, Hugoe has failed to adequately explain how the deficiencies in the notice inhibited his ability to respond to the allegations against him.[1] *See generally Lucas,* 949 P.2d at 755 (holding that in order to establish a due process violation, an employee must explain how the alleged "procedural errors were harmful"). Furthermore, the Board found that Hugoe had actual notice of the nature of the allegations against him: "[G]iven the uncontroverted evidence presented at the Appeal Board hearing, the Board believes that Mr. Hugoe knew, without question, the exact nature of the issues that would be discussed at the Pre–Disciplinary Hearing." *See generally id.* at 754 (holding that where the employee had actual "notice of the pending charges and was able to re-

---

1. Hugoe does assert that he was "unprepared to confront the issues of lack of proportionality and consistency" but fails to explain how more adequate notice would have permitted him to be better prepared. *See generally Lucas v. Murray City Civil Serv. Comm'n,* 949 P.2d 746, 755 (Utah Ct.App.1997) (observing that an employee must explain, in alleging a due process violation as a result of inadequate notice, "how [correct] procedures would have resulted in a different outcome").

spond to the charges before the termination was implemented," "the fundamental requirements of due process were met" despite his employer's failure "to strictly comply with its [notice] procedure"). Hugoe has not challenged this finding; indeed, given that the incident occurred only a week before the notice was given, it is hard to believe that Hugoe was ignorant of the reason for the hearing. Because Hugoe had actual notice of the basis for the pre-disciplinary hearing, has failed to adequately allege any harm resulting from any deficiencies in the written notice, and was afforded a pre-disciplinary hearing in order to respond to the allegations against him, we agree with the Board that Hugoe received due process in the pre-disciplinary proceedings.

¶ 10 Hugoe next contends that he was denied due process when the Board considered the November 2011 incident in making its decision. Because the November 2011 incident was not included in the City's termination letter as a reason for terminating his employment, he asserts that he was unprepared to respond to allegations concerning that incident at the hearing before the Board. Hugoe relies on this court's holding in *Fierro v. Park City Municipal Corp.*, 2012 UT App 304, 295 P.3d 696, that due process requires an employee appeal board to consider only evidence of misconduct that the employer identified as grounds for terminating the employee, *id.* ¶ 22. However, unlike the employee appeal board in *Fierro*, which explicitly based its decision on a number of unidentified instances of misconduct as grounds for termination in the termination letter given to the employee, *id.* ¶¶ 25–27, the Board in this case explicitly stated that "[n]otwithstanding the evidence of prior discipline, ... the July 17, 2012 statements and actions of Mr. Hugoe, standing alone, were

so grievous as to justify termination of employment." Thus, even accepting Hugoe's assertion that the Board's reliance on the November 2011 incident would have violated his due process rights, such a violation did not occur because the Board did not rely on the previous discipline in reaching its decision. *Cf. id.* ¶ 30 (explaining that "the appropriate course" for resolving the due process violation was to set aside the decision but give "the board an opportunity to consider whether the one ground" it had relied on that had actually been identified by the employer as a reason for termination was alone "sufficient to warrant ... termination").

¶ 11 Hugoe also argues that the Board was not impartial because one member of the Board helped to prepare witness statements used in the pre-disciplinary hearing. Although Hugoe was clearly aware of this potential conflict at the time of the hearing before the Board, he failed to assert his impartiality argument at that time. Because this issue was not raised to the Board, it is not preserved and we will not consider it. *See Carlsen v. Board of Adjustment*, 2012 UT App 260, ¶ 21, 287 P.3d 440 (holding that an issue regarding the impartiality of a board member "could have and should have been initially resolved by the Board [of Adjustment] itself" and that by failing to raise the issue before that board, the petitioner had "failed to preserve the issue for our review");[2] *see also Frito–Lay v. Utah Labor Comm'n*, 2009 UT 71, ¶ 32, 222 P.3d 55 ("The preservation doctrine provides that issues not raised in proceedings before administrative agencies are not subject to judicial review except in exceptional circumstances." (citation and internal quotation marks omitted)).

**2.** Hugoe asserts that this court's refusal to consider the impartiality issue in *Carlsen v. Board of Adjustment*, 2012 UT App 260, 287 P.3d 440, was based not on the petitioner's failure to preserve the issue, but on the fact that the impartiality was not apparent on the face of the record. We disagree. Although the *Carlsen* court elaborated that the failure to preserve had prevented full development of the record sufficient to permit its consideration of the issue, the court did not suggest that the petitioner would have been relieved of his burden to preserve his impartiality

argument had the record contained additional facts. *See id.* ¶ 21; *cf. Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶ 22, 163 P.3d 615 (explaining that a party who fails to give "the trial judge an adequate opportunity to consider [an] issue ... waive[s] the right to raise the issue on appeal"); *State v. Pinder*, 2005 UT 15, ¶ 46, 114 P.3d 551 ("[T]he purpose of the (continued ...) preservation rule is to ensure that the trial court is first given an opportunity to decide if a mistake has been made before the appellate review becomes appropriate.").

## II.  Proportionality and Consistency

¶ 12 In addition to raising the alleged due process violations, Hugoe contends that the Board's decision exceeded the bounds of reasonableness and rationality because under the circumstances, termination was not a proportionate and consistent disciplinary action.  We cannot fully address Hugoe's challenge, however, because the Board's findings are not "adequately detailed so as to permit meaningful appellate review." *See Adams v. Board of Review of the Indus. Comm'n*, 821 P.2d 1, 4 (Utah Ct.App.1991). "[T]he failure of an agency to make adequate findings of fact on material issues renders its findings arbitrary and capricious unless the evidence is clear, uncontroverted and capable of only one conclusion." *Nyrehn v. Industrial Comm'n*, 800 P.2d 330, 335 (Utah Ct.App. 1990) (citation and internal quotation marks omitted).

¶ 13 We have previously identified a number of factors that may be relevant in determining whether a sanction is proportional to the misconduct at issue:

> [E]xemplary performance by an employee may serve as evidence against termination, while job violations and continued misbehavior could weigh in favor of dismissal. The Board may also consider the following factors:  (a) whether the violation is directly related to the employee's official duties and significantly impedes his or her ability to carry out those duties;  (b) whether the offense was a type that adversely affects the public confidence in the department; whether the offense undermines the morale and effectiveness of the department; or (d) whether the offense was committed willfully or knowingly, rather than negligently or inadvertently.

*Nelson v. Orem City, Dep't of Pub. Safety*, 2012 UT App 147, ¶ 23, 278 P.3d 1089 (alteration in original) (citations and internal quotation marks omitted), *aff'd sub nom. Nelson v. City of Orem*, 2013 UT 53, 309 P.3d 237. Although Hugoe presented evidence relating to these factors, the Board did not address that evidence in its written decision and made no specific findings regarding any of these factors.  We therefore cannot adequately review the Board's proportionality determination and must direct the Board to make additional findings.

¶ 14 Although the Board also failed to make findings regarding the consistency issue, we agree with the City that Hugoe has failed to make out a prima facie case of inconsistency.  *See Kelly v. Salt Lake City Civil Serv. Comm'n*, 2000 UT App 235, ¶¶ 27, 30, 8 P.3d 1048 (holding that the Salt Lake City Civil Service Commission was required to make findings regarding consistency "only after a prima facie showing by [a terminated police officer] that the Chief's actions in her case were contrary to his prior practice"). Therefore, the evidence relating to this factor was "capable of only one conclusion." *See Nyrehn*, 800 P.2d at 335 (citation and internal quotation marks omitted).  In support of his argument that termination was not a consistent disciplinary action, Hugoe presented evidence that other employees with whom he worked frequently used vulgar language in the workplace without consequence.  However, Hugoe was not terminated simply for using vulgar language, but for the insubordination involved in his swearing at the operations manager in a threatening and aggressive manner.

¶ 15 Although the operations manager testified that he had heard employees swear at each other and that he had not reported them for it, he also testified that the employees did not swear at each other "in a mean manner but ... in a ... construction [worker's] manner" and "not directly ... at somebody."  He testified that the incident with Hugoe was different because of "the manner that" Hugoe used the vulgar language, "the temper that" he exhibited, and "the yelling." He testified that he had never before had a subordinate employee tell him to "go f-off," as Hugoe did.  Similar testimony was given by the city manager.  We agree with the City that testimony indicating that other employees regularly used profanity in the workplace and were not disciplined for it does not suggest a lack of consistency in the City's decision to terminate Hugoe for his insubordinate behavior toward the operations manager. *See Kelly*, 2000 UT App 235, ¶ 31, 8 P.3d 1048 ("Meaningful disparate treatment can only be found when similar factual cir-

cumstances led to a different result without explanation."). Because Hugoe presented no other evidence relating to the consistency issue, there was no basis for the Board to have determined that termination was an inconsistent consequence for Hugoe's behavior.

## CONCLUSION

¶ 16 We determine that Hugoe was not denied due process in the course of the pre- and post-disciplinary proceedings. Furthermore, it was unnecessary for the City to make findings regarding the consistency issue because Hugoe failed to make out a prima facie case of inconsistency. However, the Board's failure to make adequate findings regarding the proportionality of the City's decision to terminate Hugoe rendered that decision arbitrary and capricious. Accordingly, we set aside the Board's decision and direct the Board to make additional findings regarding whether termination was a proportionate disciplinary action for the City to have taken in this case.