**2018 UT App 94**

## THE UTAH COURT OF APPEALS

HEIDI PALMER,
Petitioner,

*v.*

ST. GEORGE CITY COUNCIL, ST. GEORGE MUNICIPAL CORPORATION,
AND ST. GEORGE POLICE DEPARTMENT,
Respondents.

Opinion
No. 20170209-CA
Filed May 24, 2018

Original Proceeding in this Court

Bret W. Rawson, Nate N. Nelson, and Jeremy G.
Jones, Attorneys for Petitioner

Peter Stirba and Bradley A. Schmidt, Attorneys
for Respondents

JUDGE KATE A. TOOMEY authored this Opinion, in which
JUDGES JILL M. POHLMAN and RYAN M. HARRIS concurred.

TOOMEY, Judge:

¶1     Heidi Palmer asks this court to review the decision of the
St. George City Council (the Appeal Board) to uphold her
suspension of "five days, 40 hours, without pay" for violating
the policies of the St. George Municipal Corporation (the City)
and the St. George Police Department (the SGPD).[1] Palmer
contends Respondents violated her due process rights in four
ways and that the Appeal Board exceeded its discretion when it
failed to make findings of fact to support its decision to uphold
her discipline.

---

1. We refer to the Appeal Board, the City, and the SGPD,
collectively, as Respondents.

¶2    We conclude that Palmer's due process rights were violated when the Appeal Board refused to compel the City to disclose evidence of comparable discipline within the SGPD. But there were no due process violations with respect to her three remaining claims. We further conclude that the Appeal Board's failure to make findings of fact that supported its decision to uphold Palmer's discipline constituted an abuse of discretion. We therefore set aside the decision of the Appeal Board and remand for further proceedings consistent with this opinion.

BACKGROUND

¶3    Palmer is a Sergeant with the SGPD. In June 2014, she received a report that someone's cell phone contained child pornography.[2] Palmer initiated an investigation and seized the suspect's computer and cell phone. Another officer then copied pornographic images from these devices onto a CD for Palmer's review. Palmer did not complete her report on the case until August 2016—more than two years later. During that period, she did not properly store the CD and instead left it unsecured in her desk.

¶4    Before Palmer had completed her report, her supervisor had initiated an internal affairs investigation to review her ability to manage her responsibilities. Palmer's supervisor formally complained to SGPD's Chief of Police (the Chief), who determined that the Disciplinary Review Board (the Disciplinary Board) should be convened to recommend discipline. Based on the internal affairs investigation, the Disciplinary Board recommended that Palmer be demoted in rank and that she

_____

2. Although we are setting aside the Appeal Board's decision, in part, for failing to make factual findings to support its decision, the record before us is sufficient to address the legal claims Palmer raises on her petition for review.

undergo a six-month action plan "to improve report writing and ensure any future evidence [is] logged correctly."

¶5    Following the Disciplinary Board's recommendation, Palmer received a Notice of Intent to Discipline (the Notice), informing her that she had violated St. George City Policy 4.50 related to incompetence, misconduct, and failure to perform duty. The Notice also provided the date and time of a pre-disciplinary hearing meeting and explained that Palmer could "bring to the meeting any evidence or witnesses" that she chose. Palmer requested that her attorney be present, but she was told an "attorney would not qualify as a witness" and therefore would not be allowed to attend.

¶6    Palmer appeared at the pre-disciplinary hearing meeting without counsel, after which the Chief recommended to the City Manager that she be demoted without a reduction in pay and placed on a "Performance Improvement Action Plan." The City Manager gave Palmer notice of this recommendation and informed her that she had the right to appeal it. Through the process of that appeal, the Chief reconsidered his recommendation and instead recommended only "five days (40 hours) off without pay and that [Palmer] be placed on an action plan, rather than a recommendation of demotion."[3] The City Manager upheld the decision to impose the lesser penalty, and Palmer appealed this decision to the Appeal Board.

¶7    Before her hearing in front of the Appeal Board (the Disciplinary Appeal Hearing), Palmer twice requested "production of information regarding other disciplinary matters investigated under [Palmer's supervisor]." The City responded that the comparable discipline information was "not relevant" because the only information the Appeal Board would review

---

3. It is unclear from the record why the Chief reduced the severity of his recommended discipline.

was the internal investigation of Palmer. Palmer also communicated to the City her belief that the St. George City Attorney (the City Attorney) should not be involved in the Disciplinary Appeal Hearing, because of his "prior involvement [in the investigation] and obligation to protect the City's interest," as well as her belief that the City Attorney's continued involvement in her case constituted "[a] de facto violation of [her] procedural due process rights." The City Attorney and the City disagreed and stated they would "proceed as planned."

¶8 Leading up to the hearing, both parties were informed that they would be "given one hour to present their arguments, including questioning of any witnesses." Palmer believed that one hour was too little time in which to present her defense, and that the Appeal Board's one-hour time limit was "unacceptable and yet again another attempt by the [Appeal Board] to deprive [her] of her protected due process rights."

¶9 The City Attorney did not participate in the hearing. Instead, an Assistant City Attorney advised the Appeal Board, and the City was represented by private counsel. Palmer's attorney opened the arguments by identifying five issues that he believed constituted due process violations, the following four are relevant to this petition for review: "[Palmer's] right to counsel during the [pre-]disciplinary process"; "her right to present evidence and confront witnesses free from unreasonable [time] limits"; "her right to an impartial hearing free from the taint of dual representation by city attorneys"; and "the refusal of the City and [the Appeal Board] to provide information for comparable disciplinary analysis." During the course of the hearing, Palmer's attorney called two witnesses, and the City called four.

¶10 After hearing testimony from six witnesses, the Appeal Board unanimously upheld the City Manager's decision to suspend Palmer "for five days, 40 hours, without pay." The Appeal Board issued its decision in a one-sentence

"certification" and did not make findings of fact or otherwise explain the basis for its decision to uphold Palmer's suspension. Palmer petitions this court for review of the Appeal Board's decision.

ISSUES AND STANDARDS OF REVIEW

¶11    Palmer makes three overarching contentions on judicial review. First, she contends that the Appeal Board erred in failing to rule on her claim that the City violated her due process rights when she was denied legal representation at the pre-disciplinary hearing meeting. Generally, our review of administrative agency decisions is "limited to determining whether the [agency] abused its discretion or exceeded its authority." *Taylorsville City v. Taylorsville City Emp. Appeal Board*, 2013 UT App 69, ¶ 16, 298 P.3d 1270 (quotation simplified). But when the agency's decision "implicates due process, we review it for correctness." *Id.*

¶12    Second, Palmer contends the Appeal Board violated her due process rights in three respects.[4] "Due process challenges are

_____

4. Respondents contend Palmer failed to preserve her due process violation claims. We disagree. "Utah law requires parties to preserve arguments for appellate review by raising them first in the forum below—be it a trial court or an administrative tribunal." *Columbia HCA v. Labor Comm'n*, 2011 UT App 210, ¶ 6, 258 P.3d 640. The preservation requirement is satisfied when the issue was raised at the administrative level so that the agency or appeal board had the opportunity to rule on it. *Id.* Palmer's attorney notified the Appeal Board on numerous occasions that she was challenging actions by the City and the Appeal Board on due process grounds. The due process claims were specifically articulated at the outset of her Disciplinary Appeal Hearing, which provided the Appeal Board yet another opportunity to adjudicate her claims. Palmer's attorney adequately presented

(continued…)

questions of general law and we give no deference to the agency's determination of what constitutes due process." *Fierro v. Park City Mun. Corp.*, 2012 UT App 304, ¶ 8, 295 P.3d 696 (quotation simplified).

¶13    Third, Palmer contends the Appeal Board abused its discretion when it failed to "provide any findings that could guide appellate review." "The failure of an agency to make adequate findings of fact on material issues renders its findings arbitrary and capricious unless the evidence is clear, uncontroverted and capable of only one conclusion." *Hugoe v. Woods Cross City*, 2013 UT App 278, ¶ 12, 316 P.3d 979 (quotation simplified).

ANALYSIS

I.  Due Process

¶14    Palmer contends the Appeal Board erred in failing to rule on her due process claim that she was entitled to legal representation at her pre-disciplinary hearing meeting. Palmer also contends the Appeal Board violated her due process rights in three respects: by imposing a one-hour time limit for the Disciplinary Appeal Hearing; by receiving advice from the City Attorney who had already advised the City in the pre-disciplinary proceedings; and by refusing to compel the City

---

(…continued)
the claims to the Appeal Board, and the Appeal Board's failure to rule on the claims does not mean they were not preserved. *Cf. Fierro v. Park City Mun. Corp.*, 2012 UT App 304, ¶ 12, 295 P.3d 696.

to disclose comparable discipline evidence.[5] We address each in turn.

A.    Employees Do Not Have the Right to Counsel at Pre-Disciplinary Proceedings.

¶15    Palmer contends her attorney should have been allowed to represent her at the pre-disciplinary hearing meeting and that the Appeal Board erred when it failed to rule in her favor on the issue. Palmer does not assert any constitutional right to counsel in administrative proceedings but correctly points out that the right to counsel attaches if it is provided by statute. *Cf. Nelson v. Department of Emp't Sec.*, 801 P.2d 158, 163 (Utah Ct. App. 1990) (explaining that agencies are not "required to appoint counsel for claimants" and that, "[g]enerally, claimants in an administrative hearing [before the Labor Commission] are entitled to retain the counsel of their choice"). Specifically, Palmer argues that, under Utah Code section 10-3-1106, the statutory right of employees to be represented by counsel in disciplinary proceedings attaches "as soon as [an] employee becomes [the] subject of discipline." We disagree with Palmer's interpretation of section 10-3-1106.

¶16    When interpreting statutes, we first look to their plain language and give effect to that language unless it is ambiguous. *State v. Jeffries*, 2009 UT 57, ¶ 7, 217 P.3d 265; *see also Marion*

---

5. We address these four contentions raised by Palmer under the rubric of due process because, "[d]espite the flexibility of administrative hearings, there remains the necessity of preserving fundamental requirements of procedural fairness in administrative hearings," and an administrative body clearly exceeds its discretion when it "conducts its proceedings such that it denies due process to a party appearing before it." *Tolman v. Salt Lake County Att'y*, 818 P.2d 23, 28 (Utah Ct. App. 1991) (quotation simplified).

*Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 15, 267 P.3d 863 (explaining that statutory language is ambiguous when "its terms remain susceptible to two or more reasonable interpretations"). But "our plain language analysis is not so limited that we only inquire into individual words and subsections in isolation; our interpretation of a statute requires that each part or section be construed in connection with every other part or section so as to produce a harmonious whole." *Ivory Homes, Ltd. v. Utah State Tax Comm'n*, 2011 UT 54, ¶ 21, 266 P.3d 751 (quotation simplified).

¶17   Utah Code subsection 10-3-1106(2)(a) provides that an employee may "appeal the final decision to discharge, suspend without pay, or involuntarily transfer to an appeal board." Utah Code Ann. § 10-3-1106(2)(a) (LexisNexis 2015). Subsection (3)(a) provides the procedural requirements for appealing the final decision to discharge, suspend, or transfer. *Id.* § 10-3-1106(3)(a). And subsection (4)(a) provides the rights of "[a]n employee who is the subject of the discharge, suspension, or transfer" during that employee's appeal. *Id.* § 10-3-1106(4)(a). At this point, after the final decision to discipline has been made (that is, discharge, suspension, or transfer), an employee "may," among other things, "appear in person and be represented by counsel." *Id.* § 10-3-1106(4)(a)(i). When read as a whole, the statute provides that an employee has the right to be represented by counsel only after "the final decision" has been made to impose discipline. *See id.* § 10-3-1106(2)(a), (4)(a).

¶18   Here, Palmer was not disciplined during the pre-disciplinary hearing meeting. At that point, she was the subject of a pre-discipline investigation that resulted in a recommendation for discipline. Her pre-disciplinary hearing meeting was intended to inform her of the alleged misconduct and to allow her to explain her actions before the Chief made a recommendation for discipline to the City Manager. Only when the City Manager made the final decision to suspend Palmer did she become "the subject of the . . . suspension," and therefore her

right to have an attorney present did not attach until after the City Manager made this decision. *See id.* § 10-3-1106(4)(a). We conclude Palmer's statutory due process rights were not violated when she was told that her attorney could not attend the pre-disciplinary hearing meeting.

B.     A One-Hour Time Limit at the Disciplinary Appeal Hearing Does Not Violate Due Process.

¶19     Palmer contends the one-hour time limit imposed by the Appeal Board violated her due process rights because she was "unable to call a number of her proposed witnesses and was not given anything resembling a reasonable time to address the evidence or advance her legal arguments." We disagree.

¶20     The Administrative Procedures Act (the APA) governs agency proceedings, such as the Disciplinary Appeal Hearing in this case. *See* Utah Code Ann. § 63G-4-102(1) (LexisNexis 2016). The APA provides that the presiding officer of an appeal board "shall regulate the course of the hearing to . . . afford all the parties reasonable opportunity to present their positions," *id.* § 63G-4-206(1)(a), and "shall afford to all parties the opportunity to present evidence, argue, respond, conduct cross-examination, and submit rebuttal evidence," *id.* § 63G-4-206(1)(d).

¶21     Here, the Appeal Board gave each party one hour to present evidence and examine their own witnesses, but the time used to cross-examine witnesses was not deducted from each party's allotted time.

¶22     The parties cite *Sierra Club v. Utah Solid & Hazardous Waste Control Board*, 964 P.2d 335 (Utah Ct. App. 1998), *disagreed with on other grounds by Utah Chapter of Sierra Club v. Utah Air Quality Board*, 2006 UT 74, 148 P.3d 960. In that case, Sierra Club challenged the Utah Solid and Hazardous Waste Control Board's decision to permit the United States Army's plan for constructing a hazardous waste treatment facility and to destroy the chemical weapons—including nerve agents and blister

agents—stockpiled in Tooele. *Id.* at 338–39. "The risk from continued storage of these agents [had] been a matter of longstanding concern." *Id.* at 338. Before the Army could begin its destruction of the hazardous waste, the board required "a series of 'trial burns' to ensure that the facility could operate safely." *Id.* These trial burns were also subject to screenings to address whether the emissions during the burns "would cause cancer . . . [or] other types of illness." *Id.* This required the involvement of the State Division of Environmental Quality and the Environmental Protection Agency. *Id.* The conclusion of these screenings was that the overall risks of cancer and other illnesses did "not exceed EPA guidance levels." *Id.* This prompted Sierra Club to seek agency action. *Id.* at 338–39. Sierra Club was informed six months in advance of a hearing before an appeal board that it would be given "twelve hours to argue and conduct direct and cross-examination." *Id.* at 346. Sierra Club asserted that the restrictions did not allow it adequate time to cross-examine witnesses. *Id.* It argued on its petition for review to this court that the appeal board violated its due process rights "by unreasonably limiting its time to present its case and cross-examine adverse witnesses." *Id.* The opposing party argued that "Sierra Club was afforded ample opportunity to present its case and to cross-examine witnesses, but that Sierra Club failed to efficiently use its allotted time and failed to exploit the available opportunities for otherwise getting evidence before the [appeal board]." *Id.*

¶23 On review, this court determined that although the appeal board's time limitations "appear[ed] somewhat parsimonious, under the APA the [appeal board] was entitled to regulate the course of the hearing, which necessarily included its duration." *Id.* at 347. The appeal board "offered the parties numerous opportunities to present their positions in forms other than through time-consuming testimony" and granted Sierra Club "forty-five minutes of extra time." *Id.* In addition, Sierra Club failed to show it "suffered substantial prejudice" because, "[a]side from generally alleging that it lacked time to cross-

examine several witnesses, Sierra Club [did] not state what evidence it needed to get in but did not, nor [did] it show that the case would have come out differently had it been given more time." *Id.* at 348. This court concluded that the "time limitations were not unreasonable and that Sierra Club was not denied its constitutional rights to Due Process." *Id.*

¶24 Here, the one-hour per-side time limit was not unreasonable. The complexity of Palmer's case did not rise to that of *Sierra Club* because Palmer's disciplinary proceedings related to one discrete employment incident. The Appeal Board permitted the parties to cross-examine witnesses outside of the one-hour limit and to admit hundreds of pages of exhibits into evidence. Although counsel was unable to finish conducting his direct examination of a witness because his time was running out and could not call his remaining witnesses, he used a considerable portion of his time having Palmer, as a witness, read documents that were already admitted into evidence. Palmer has also failed to show that she suffered substantial prejudice by the time limit; she did not identify evidence she was prevented from presenting before the Appeal Board or what certain witnesses would have testified to, had they been called, and she did not explain how the case might have been resolved differently had she been given more time. *See id.* We therefore conclude the Appeal Board's one-hour time limit did not constitute a due process violation.

C.  Advice from the Same Attorney at Pre-Disciplinary Proceedings and Disciplinary Appeals Is Not a Due Process Violation.

¶25 Palmer contends the Appeal Board violated her due process rights when the City Attorney advised both the SGPD in the pre-disciplinary investigation as well as the Appeal Board after discipline had been imposed. We disagree.

¶26 "A clear demonstration of partiality apparent on the face of the record, or a showing of direct, pecuniary interest,

automatically requires disqualification of the decision maker." *V-1 Oil Co. v. Department of Envtl. Quality, Div. of Solid & Hazardous Waste*, 939 P.2d 1192, 1197 (Utah 1997) (internal citations omitted). Our supreme court has explained that, "[g]enerally, commentators divide [administrative agency] functions into three categories: investigative, advocatory (or prosecutorial), and adjudicative." *Id.* at 1199. And "[a]lthough there is little potential for bias when the investigative and advocatory functions are combined, the potential for impermissible bias when either the investigative or the advocatory function is combined with the adjudicative function is more readily apparent" because that is the point when "the case becomes more accusatory in nature." *Id.*

¶27   Here, the City Attorney's advice both to the SGPD and to the Appeal Board fell within the investigative function; he did not prosecute or adjudicate the claims against Palmer. As a result, it would be difficult for Palmer to demonstrate that the City Attorney's involvement adversely affected the Appeal Board's impartiality. *See id.* And indeed, Palmer has not provided evidence to that effect. Rather, she argues that "the [City Attorney's] dual representation raised, at a minimum, an unacceptable risk that the fairness of the hearing had been impaired." But Palmer also concedes in her brief that the City Attorney acted solely in an advisory role—and not in a prosecutorial or adjudicative role—in advising the SGPD and the Appeal Board. She also states that the City Attorney's "advice to the [Appeal Board] and the SGPD, as well as his conversations with [the Assistant City Attorney], are potentially shrouded behind the cloak of attorney-client privilege." But she does not explain how this could have affected the Appeal Board's decision, and she does not identify any information that the Appeal Board relied on that might have been improperly withheld from her. Instead, she argues that "a new hearing is warranted to allow [her] to explore the impact of the adverse representation . . . [and] whether [the City Attorney's] involvement created the type of 'partiality or the sort of attitude

toward a person that is strong enough to establish a disqualifying bias.'" (Quoting *Carlsen v. Board of Adjustment of City of Smithfield*, 2012 UT App 260, ¶ 21, 287 P.3d 440.)

¶28 Because Palmer's request for a new hearing essentially amounts to a "fishing expedition" for evidence outside of the record on her petition for review, we will not remand the case to allow Palmer to "explore the impact" of certain outcomes. *Cf. State v. Hopkins*, 1999 UT 98, ¶ 13 n.1, 989 P.2d 1065 (explaining that, in the context of remands under rule 23B of the Utah Rules of Appellate Procedure, there are inherent dangers in remanding under conditions where the "allegations are wholly speculative" as it would result in a "fishing expedition" (quotation simplified)).

¶29 The City Attorney did not provide representation to any party during the actual hearing before the Appeal Board. Instead, private counsel represented the City during the proceedings before the Appeal Board and thus there was no danger of an overlap of duties during the Disciplinary Appeal Hearing. In addition, the City Attorney did not adjudicate Palmer's claims after having advised the City and the SGPD about appropriate discipline. The City Attorney's function in this case was to help advise the City during the pre-disciplinary hearing proceedings, and to then advise the Appeal Board on appropriate discipline. We therefore conclude Palmer's due process rights were not violated in this respect.

D. Refusal to Provide Discovery on Comparable Discipline Violates Due Process.

¶30 Palmer contends her due process rights were violated when the Appeal Board failed to compel the City to provide discovery on comparable discipline of other SGPD employees. She asserts that without such information, the Appeal Board could not have known whether the sanction was proportional or "'consistent with previous sanctions imposed by the department pursuant to its own policies.'" (Quoting *Nelson v. Orem City*

*Dep't of Public Safety*, 2012 UT App 147, ¶ 20, 278 P.3d 1089.) We agree.

¶31    Administrative agency appeal boards have the "statutory authority to conduct appeals brought by suspended or discharged employees, and in that regard, to make two inquiries: (1) do the facts support the charges made by the department head, and, if so, (2) do the charges warrant the sanction imposed?" *Kelly v. Salt Lake City Civil Service Comm'n*, 2000 UT App 235, ¶ 16, 8 P.3d 1048 (quotation simplified). The second question "breaks down into two sub-questions: [f]irst, is the sanction proportional; and second, is [it] consistent with previous sanctions imposed by the department pursuant to its own policies." *Id.* ¶ 21. In administrative agency appeals, the employee bears the burden of "showing some meaningful disparity of treatment between herself and other similarly situated employees." *Id.* ¶ 30; *see also Perez v. South Jordan City*, 2014 UT App 31, ¶ 26, 320 P.3d 42. The employee must "establish a prima facie case that the [discipliner] acted inconsistently in imposing sanctions by presenting sufficient evidence from which the [agency] could reasonably find a relevant inconsistency." *Kelly*, 2000 UT App 235, ¶ 30. To establish this prima facie case, the employee must therefore have access to information related to the discipline of other similarly situated employees.

¶32    Here, the City refused to disclose comparable discipline evidence to Palmer, even upon request, asserting that "other disciplinary matters involving the [SGPD] and other individuals are not relevant and will not be provided." Palmer raised this issue with the City Attorney and requested that the Appeal Board compel disclosure of this information, but the Appeal Board never responded to the request. As a result, the City and the Appeal Board precluded Palmer from accessing information that might have helped her carry her burden of establishing "meaningful disparity of treatment between herself and other similarly situated employees." *See id.*

¶33 Respondents argue that Palmer was not guaranteed the right to obtain information regarding comparable discipline. Respondents also argue that Palmer could have gained access to the records of comparable discipline through a Government Records Access and Management Act (GRAMA) request. *See* Utah Code Ann. §§ 63G-2-201, -205 (LexisNexis 2016). Neither argument is persuasive.

¶34 First, Respondents assert that, in this case, under Utah Code section 10-3-1106, Palmer was only entitled to "examine the evidence to be considered by the [Appeal Board]." *Id.* § 10-3-1106(4)(a)(iv) (2015). In support of this argument, Respondents rely on case law from other jurisdictions that have determined "there is no constitutional right to pretrial discovery in administrative proceedings," *see Kelly v. United States Envtl. Prot. Agency*, 203 F.3d 519, 523 (7th Cir. 2000), and that the "scope of discovery in administrative hearings is governed by statute and the agency's discretion," *see Cimarusti v. Superior Court*, 94 Cal. Rptr. 2d 336, 342 (Ct. App. 2000). But they have not cited Utah case law to support this point. Indeed, Utah case law specifies that the employee bears the burden of proving that the discipline should not be upheld based on inconsistent treatment of similar conduct. *See Perez*, 2014 UT App 31, ¶ 26; *Kelly*, 2000 UT App 235, ¶ 30; *Lucas v. Murray City Civil Service Comm'n*, 949 P.2d 746, 761 (Utah Ct. App. 1997). This can only be accomplished if the employee has reasonable access to information regarding the City's disciplinary decisions for similar conduct.

¶35 For similar reasons, we disagree with the Appeal Board's argument that the City need not provide Palmer with access to comparative discipline information, because Palmer could have obtained that information through a GRAMA request. The City has not identified any Utah case law or statute to support the argument that an employer need not disclose evidence that could be obtained through other means. Although a GRAMA request is certainly one option Palmer could have pursued to obtain disciplinary information to aid in her defense, we are

unaware of any case or statute requiring her to have done so.[6] Imposing such a requirement would seem to be a waste of the government's time and resources and does not appear to provide the employee adequate access to the evidence necessary to meet the applicable burden of proof. *See Perez*, 2014 UT App 31, ¶ 26; *see also id.* ¶ 30 ("The disciplined employee must identify employees in similar circumstances—employees with similar disciplinary histories and service time, for example— who received lighter punishments for similar offenses."). Without adequate access to comparative discipline information, the employee has little chance of being able to carry that burden.

---

6. The City's private attorney cited *Young v. Salt Lake County*, 2002 UT 70, 52 P.3d 1240, to support its argument that Palmer must file a GRAMA request to obtain the comparable discipline evidence. In *Young*, the employee was denied comparable discipline evidence after filing a GRAMA request, followed the administrative appeal requirements, and then sought judicial review of the agency's final denial of the requested evidence. *Id.* ¶¶ 2–3, 6. The district court determined that "(1) Young's request for judicial review was timely, (2) Young had a due process right in the requested information, and (3) Young's right to the information was not outweighed by the privacy interests of third parties." *Id.* ¶ 3. On appeal the Utah Supreme Court analyzed whether the district court's grant of summary judgment in Young's favor was appropriate under GRAMA. *Id.* ¶¶ 6–18. *Young* did not state that a GRAMA request is the sole means of obtaining comparable discipline evidence. Rather, *Young* explains the "appeals process for records requests" under "the GRAMA statutory scheme." *Id.* ¶ 6. In other words, when an individual requests information under GRAMA, then the GRAMA statutory scheme applies. But *Young* does not support the City's contention that, because an employee can submit a GRAMA request, then the agency or employer is relieved from disclosing comparable evidence for disciplinary proceedings upon a timely request.

The employee is therefore entitled to evidence of comparable discipline, and the agency must reasonably disclose that information to the employee upon a timely request.[7]

¶36    Palmer's due process rights were violated when the City refused to disclose evidence of comparable discipline upon request, and again when the Appeal Board failed to compel the City to disclose such evidence. We therefore set aside the Appeal Board's decision and remand the case for further proceedings in which the City shall provide Palmer comparable discipline evidence and for a new hearing at which Palmer may use this new evidence.

---

7. Respondents have not argued that the SGPD or the City did not retain the comparable discipline evidence of other employees who violated City and SGPD policies. Rather, the City flatly refused to disclose such evidence, and the Appeal Board never responded to the request to compel its production. Indeed, it is highly likely that it would retain records of such violations of policies and subsequent disciplinary actions, pursuant to their respective policies. SGPD Policy 1005.5 requires supervisors to "ensure that all formal and informal complaints are documented on a complaint form," "[a]ll complaints and inquiries should also be documented in a log that records and tracks complaints," and the "log shall include the nature of the complaint and the actions taken to address the complaint." SGPD Policy 1005.6.3 and 1005.6.4 further require that formal investigations include documentation of the investigation, including an introduction, synopsis, summary, evidence, conclusion, exhibits, and the final disposition. And City Policy 4.50(V) requires the department supervisor, in this case the Chief, to recommend to the City Manager appropriate discipline and to include "[d]etails of the employee's behavior or performance" and a "summary of the evidence that includes the employee's response and submitted evidence."

II. Abuse of Discretion

¶37     Palmer contends the Appeal Board exceeded its discretion when it failed to articulate factual findings to support its decision to uphold her discipline. We agree.

¶38     "The failure of an agency to make adequate findings of fact on material issues renders its findings arbitrary and capricious unless the evidence is clear, uncontroverted and capable of only one conclusion." *Hugoe v. Woods Cross City*, 2013 UT App 278, ¶ 12, 316 P.3d 979 (quotation simplified). Without any findings of fact, or even a discussion on the record to support a decision, this court cannot perform its duty of reviewing the agency's decision "in accordance with established legal principles and of protecting the parties and the public from arbitrary and capricious administrative action." *Milne Truck Lines, Inc. v. Public Service Comm'n*, 720 P.2d 1373, 1378 (Utah 1986).

¶39     The Appeal Board exceeded its discretion when it failed to articulate factual findings to support its decision to uphold Palmer's discipline. Nothing apparent in the record would guide this court to determine that the Appeal Board's decision was reasonable, especially considering that Palmer was precluded from presenting comparable discipline evidence to meet her burden of proving that her discipline was not proportional or consistent with discipline imposed for similar conduct.[8]

---

8. In fact, Respondents concede as much in their brief, stating that "the Appeal Board was not required to consider the consistency of [Palmer's] treatment because [she] 'failed to point to sufficiently similar episodes of conduct by other officers so as to trigger consistency analysis.'" (Quoting *Kelly v. Salt Lake City Civil Service Comm'n*, 2000 UT App 235, ¶ 34, 8 P.3d 1048.) This was an onerous task, considering Respondents refused to disclose evidence of similar conduct on the basis that it was "not

(continued…)

CONCLUSION

¶40   We conclude that Palmer was not entitled to counsel in pre-disciplinary proceedings, because the statutory right to an attorney attaches only after discipline has been imposed. Because Palmer was able to admit evidence in the form of exhibits and in direct testimony and cross-examination, and because she has failed to articulate what evidence she was prevented from admitting or how it could have affected the outcome, her due process rights were not violated when she received one hour to present her case to the Appeal Board. In addition, Palmer's due process rights were not violated when the City Attorney advised the SGPD and the City during pre-disciplinary hearings and then advised the Appeal Board.

¶41   We further conclude that failure to disclose comparable discipline evidence upon request is a due process violation, because it precludes employees such as Palmer from meeting the burden of proving that the discipline is not warranted, proportional, or consistent with what was imposed upon similarly situated employees. Finally, the Appeal Board exceeded its discretion when it failed to make factual findings to support its decision to uphold Palmer's discipline. We therefore set aside the Appeal Board's decision and remand for the City to produce the comparable discipline evidence and for a new disciplinary appeal hearing.

———————

(…continued)
relevant." And in *Kelly*, the employee had access to comparable discipline evidence but could not make a showing that her conduct was similar to other employees with more lenient penalties. *Kelly*, 2000 UT App 235, ¶¶ 31, 34. Therefore, Respondents' reliance on *Kelly* is also misplaced.