**2019 UT App 20**

# THE UTAH COURT OF APPEALS

KILGORE COMPANIES,
Appellee,
*v.*
UTAH COUNTY BOARD OF ADJUSTMENT,
Appellant.

Opinion
No. 20170585-CA
Filed February 7, 2019

Fourth District Court, American Fork Department
The Honorable Robert C. Lunnen
No. 170100064

M. Cort Griffin and Jeffrey R. Buhman, Attorneys
for Appellant

Graden P. Jackson and William B. Ingram, Attorneys
for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
FORSTER concurred.

HAGEN, Judge:

¶1 Utah County appeals the district court's decision to set aside the Utah County Board of Adjustment's denial of Kilgore Companies' request for a conditional use permit. The Board denied Kilgore's request to build silos that were taller than otherwise permitted, finding that the increased height would "degrade the public health, safety, or welfare" or "adversely affect local property values." We agree with the district court that there was insufficient evidence to support these findings. Because Kilgore carried its burden of proving that the proposed

conditional use requirements were met, the district court correctly set aside the Board's decision.

## BACKGROUND

¶2      Kilgore operates a properly licensed and bonded asphalt batch plant (the Plant) located in a mining and grazing zone of Utah County. Operation of the Plant is a permitted use under subsection 5-7(B)(2) of the Utah County Land Use Ordinance (UCLUO). Under UCLUO subsection 5-7(G)(1), the "maximum permissible height of any structure shall be forty (40) feet" unless, among other exceptions, the Board approves a conditional use for a taller, unoccupied structure. There is no limit to the number of 40-foot or shorter unoccupied structures that may be built.

¶3      Kilgore applied for, and the Board unanimously approved, a conditional use permit for three silos with a height not to exceed 100 feet. The Board found that the requested silos met the conditional use requirements outlined in UCLUO subsection 7-20(C)(1)–(7).[1] Kilgore received and installed the three 100-foot silos, as well as two additional 65-foot silos.

---

1. UCLUO subsection 7-20(C) provides that "the Board shall grant approval" if the conditional use: (1) does not "degrade the public health, safety or welfare"; (2) is "consistent with the general purposes and intent of the land use ordinance"; (3) is "consistent with the 'characteristics and purposes' stated for the zoning district involved and the adopted general plan"; (4) is "compatible with the public interest and with the characteristics of the surrounding area"; (5) does "not adversely affect local property values"; (6) "compl[ies] with all of the terms and requirements of the land use ordinance"; and (7) does "not result

(continued…)

¶4 Several months later, Kilgore submitted a new application (the Application), requesting a conditional use for the two additional 65-foot silos, and the Board met to consider the Application. The Board repeatedly acknowledged throughout the meeting that because silos up to 40 feet in height are a permitted use, it was considering only whether to approve the additional 25 feet.

¶5 The Board also received public comment. Among other things, citizens expressed concern regarding local property values, traffic, road safety, light pollution,[2] and the impact that dust and other emissions have on public health. Based on these concerns, the Board continued the meeting and requested that Kilgore provide further information at the subsequent meeting addressing how the additional 25 feet would affect local property values and the public health, safety, or welfare.

¶6 Before the next meeting, the Utah County Zoning Administrator (the Administrator) issued a written report, recommending approval of the Application. Although Kilgore had yet to submit the requested supplemental information, the Administrator found that the Application satisfied the conditional use requirements under UCLUO subsection 7-20(C). Notably, the Administrator found that the proposed conditional use would "not degrade the public health, safety, or welfare,"

_____

(…continued)

in a situation which is cost ineffective, administratively infeasible, or unduly difficult for the provision of essential services."

2. "Light pollution" is defined as "unwanted or excessive artificial light." *Light Pollution*, Encyclopedia Britannica, https://www.britannica.com/science/light-pollution [https://perma.cc/22BS-5SZZ].

because only the height of the silos could be considered and not the operations of the Plant, which is subject to "bonding requirements and the approved travel route and traffic plan analysis." The Administrator also found that there was "no evidence . . . [that the additional height] would adversely affect local property values due to the existing uses on the property, and its general compatibility with uses on adjacent properties."

¶7     As to property values, the Administrator noted that "[o]nly the excessive height should be considered as a factor" because UCLUO subsection 7-20(C) permits the Plant's operations and 40-foot silos at the current location. The Administrator conceded that his finding was not based on any appraisals or other professional statements regarding property values, because none had been included with the Application. But the Administrator explained that any visual impact of the conditional use would be mitigated because the closest dwelling is more than half a mile away from the proposed location and the additional silos could be painted in earth tones to match the approved 100-foot silos. This finding was further supported by a professional report later submitted by Kilgore in which an appraiser determined that the additional silos "would have [an] inconsequential visual impact on nearby properties . . . based on the presence of the three 100-foot silos, which have a dominant position relative to any silos of a lesser height [that] could be placed on the site."

¶8     Utah County, on the other hand, provided testimony from residents that live near the Plant. They complained that their property values had diminished. One homeowner claimed that he purchased a house near the Plant three years earlier for $145,000, but a realtor told him that the value was "probably going to be cut in half." Other homeowners said that they would not have purchased their homes if they had known that the Plant would operate as it does. One homeowner felt that the "homes are not of value anymore."

¶9      As to the public health, safety, and welfare, Utah County explained, presumably referring to the sources of origin, that there are "six different forms of emissions that are related directly to [the Plant]: Batch mix and drum mix driers, hot oil heaters, truck load-out, silo filling, asphalt storage tanks, and yard emissions." Utah County also explained that "dust is often a product of asphalt production." Among other things, Utah County asserted that these emissions can affect "reproduction, cause birth defects, [and cause] harmful effects on the skin, bodily fluids and the immune system." Utah County "believe[d] the additional height [of the silos] could compound these effects and make them worse."

¶10      Members of the public also testified before the Board and complained that taller silos would lead to Kilgore "grinding more dirt," which could have an effect on the children with asthma. One resident living a mile away from the Plant could smell the smoke the Plant produces. Another resident claimed she had to "sleep in [her] closet for [a] year" because the light from the Plant would shine through her window. Residents also complained that some of the trucks transporting the asphalt do not stop at stop signs, the number of trucks leads to unsafe walking and biking conditions, and the trucks are damaging local roads due to the weight of the loads. But Utah County conceded, "We don't have any authority to shut down their operation, to stop trucks from moving, to stop smoke from flying. That's beyond our authority."

¶11      In response, Kilgore explained that the additional height of the silos "doesn't change how fast [the Plant] can run," "how much material it can produce," or the "hours of operation." Even if Kilgore added "eight more 40-foot silos . . . [Kilgore] still cannot increase [the number of] trucks under [its] current permit," which is 150 round-trips per day. Kilgore attributed the "dust issues" to the traffic on "the dirt roads inside the pit," not the material stored in the silos. And the Division of Air Quality

inspected the Plant and informed Kilgore that it was "doing really well." Kilgore explained that, without approval of the Board, it is permitted to install as many 40-foot silos as it wanted to achieve the same result. Kilgore requested the additional height to reduce the number of silos on the property to achieve the same permitted use.

¶12    The Board denied the Application and determined that:

>  1. The additional height degrades the property values of adjacent properties, and

>  2. The increased height for additional silos would continue this degradation, and

>  3. That [Kilgore] has not shown that the application will not degrade the public health, safety, or welfare.

¶13    Kilgore challenged the Board's denial by filing a petition for judicial review in district court. After reviewing the Application, the Administrator's report, "transcripts of the meetings, and all materials submitted to and considered by the Board" in making its decision, the court determined that the Board's decision was "not supported by substantial evidence and, therefore, is arbitrary and capricious."

¶14    First, the court concluded that "insufficient evidence was presented to the Board to distinguish between public health, safety, and welfare affected by the overall operation of [the Plant] and the conditional use requested by the Application." Second, the court concluded that there was "insufficient evidence . . . presented to the Board to distinguish between property values affected by the overall operation of [the Plant] and the conditional use requested by the Application." The court therefore set aside the Board's denial of the Application and

"remand[ed] the matter to the Board with instruction to approve Kilgore's Application."

¶15　Utah County appeals.

ISSUES AND STANDARDS OF REVIEW

¶16　Utah County contends the district court erred in setting aside the Board's denial of the Application because Kilgore failed to carry "its burden of proof to establish by a preponderance of the evidence that the 65-foot silos do not degrade the public health, safety or welfare and do not adversely affect local property values." Relatedly, Utah County contends the district court erred in determining that the Board's decision to deny the conditional use permit was not supported by substantial record evidence.[3] "[I]n an appeal of an administrative

---

3. In the alternative, Utah County argues that we should vacate the district court's order and remand to give the Board the opportunity to enter additional findings of fact and conclusions of law. Utah County relies on *McElhaney v. City of Moab*, 2017 UT 65, 423 P.3d 1284, in which the Utah Supreme Court directed the district court to instruct the land use authority to revisit an issue and make additional findings. *Id.* ¶ 42. In that case, our supreme court determined that the absence of any written findings of fact made the land use authority's decision "an amorphous target" and left the reviewing courts and the parties to guess at "what specifically a party seeking to overturn the [authority's] ultimate determination would have to show was unsupported by substantial evidence in the record." *Id.* ¶ 31. Here, in contrast to *McElhaney*, the Board provided written findings that the conditional use was denied because (1) "the applicant has not shown that the application will not degrade the public health, safety, or welfare," (2) "the additional height degrades the

(continued…)

order, we review the district court's decision for whether it correctly determined whether the administrative decision was arbitrary and capricious or illegal." *LJ Mascaro Inc. v. Herriman City*, 2018 UT App 127, ¶ 16, 428 P.3d 4 (quotation simplified); *see also* Utah Code Ann. § 17-27a-801(3)(b) (LexisNexis Supp. 2018) (providing that district courts "shall . . . presume that a final decision of a land use authority . . . is valid" and uphold that decision unless it is "arbitrary and capricious" or "illegal").

## ANALYSIS

### I. Burden of Proof

¶17 Utah County contends the district court erred in determining that Kilgore satisfied its burden of proving by a preponderance of the evidence that the additional height of the silos would not have a negative effect on (1) the public health, safety, and welfare, or (2) property values. UCLUO subsection 7-20(D) provides that the "applicant has the burden of proving

---

(…continued)

property values of adjacent properties," and (3) approval would "continue this degradation." While the Board made no subsidiary findings to support these ultimate conclusions, the findings were sufficient to apprise the parties of "the basis of its decision," provided "notice of what [the parties] would need to challenge on appeal," and allowed us to perform our duty of assessing whether "there was substantial record evidence to support the Board's decision." *See J.P. Furlong Co. v. Board of Oil, Gas & Mining*, 2018 UT 22, ¶ 30 & n.8, 424 P.3d 858. And our review of the record shows that "the evidence is clear, uncontroverted and capable of only one conclusion." *Palmer v. St. George City Council*, 2018 UT App 94, ¶ 13, 427 P.3d 423 (quotation simplified).

by a preponderance of the evidence that all the conditions for granting a conditional use have been met and must meet that burden based on the facts presented [in] the record; expressions of support or protest alone shall not constitute the basis of approval or denial." The preponderance of the evidence standard "requires the proponent of a contested fact to demonstrate that its existence [or nonexistence] is more likely than not." *Harken Sw. Corp. v. Board of Oil, Gas & Mining*, 920 P.2d 1176, 1182 (Utah 1996); *see also T-Mobile USA, Inc. v. Utah State Tax Comm'n*, 2011 UT 28, ¶ 17, 254 P.3d 752.

¶18   Here, "the correct focus for review is whether Kilgore satisfied its burden of proof relative to the request for additional height [of the silos], and not the number of silos or overall operation of [the Plant]" because it is undisputed that there is no limit to the number of 40-foot silos Kilgore could install.

¶19   With respect to the public health, safety, and welfare, Kilgore presented testimony from its representatives, including the Plant manager, that the height of the two silos would not change the overall operation or production capacity of the Plant or the attendant secondary effects on air quality, traffic, or noise and light pollution. Kilgore's representatives testified that if the Board did not approve the Application, it would install three or more 40-foot silos to achieve the same result. In addition, the representatives testified that the greater capacity of two taller silos, rather than three or more smaller ones, would have a positive effect on the public health, safety, and welfare because it would require less movement of material between the silos and would avoid outside storage and mixing of materials that can negatively affect air quality. Although Utah County dismisses this testimony as mere representations and not proof, this was "competent, credible, and uncontradicted testimony" given by qualified witnesses with personal knowledge of the Plant's operations. *See Harken Sw. Corp.*, 920 P.2d at 1178, 1182 (determining that the Board of Oil, Gas and Mining "ignor[ed]

. . . competent, credible, and uncontradicted testimony" of an expert witness regarding the status of oil and gas wells when the board made its decision). This testimony also supports the "more likely than not" conclusion that the height of the silos will not have a negative effect on the public health, safety, or welfare. *See id.*

¶20     As to property values, Utah County argues on appeal that "increased activity and output facilitated by the 65-foot silos have adversely affected local property values." But, as Kilgore repeatedly explained to the Board, the height of the silos has no effect on "how fast [the Plant] can run" or "how much material it can produce." A separate permit "restricts the amount of ground to be disturbed . . . [and] the number of trucks that come and go [from the Plant] each day" and that "any expansion [of Kilgore's operations] would have to go through a whole new approval process" with the State, the county, and regulatory agencies. The addition of silos, whether 40 feet or taller, does not increase the activity of the Plant.

¶21     Kilgore also provided the Board a professional report from an appraiser who visited the Plant and determined that the additional silos "would have [an] inconsequential visual impact on nearby properties . . . based on the presence of the three 100-foot silos, which have a dominant position relative to any silos of a lesser height which could be placed on the site." The Administrator's report also explained that, because the increased height of the silos would have no impact on the secondary effects of the Plant's operations, the only impact would be visual. And this visual impact would be mitigated because the closest dwelling is located more than half a mile away from the proposed location and the silos could be painted in earth tones, just like the 100-foot silos. These reports support the "more likely than not" conclusion that the height of the silos will not have a negative effect on surrounding property values.

¶22 On this record, Kilgore satisfied its burden of proof by a preponderance of the evidence that the two 65-foot silos would not have a negative effect on the public health, safety, and welfare, or property values. "[W]e cannot determine how the Board could have reached its conclusion without ignoring this competent [and] credible" evidence submitted by Kilgore in support of the Application. *See Harken Sw. Corp.* 920 P.2d at 1182. Therefore, the district court correctly determined that Kilgore carried its burden of proof before the Board.

## II. Substantial Evidence

¶23 Utah County also contends "[t]he Board's finding that the 65-foot silos adversely affect local property values" and "degrade the public health, safety [and] welfare" is "supported by substantial evidence in the record." We disagree.

¶24 Courts shall "presume that a final decision of [the Board] is valid" unless the decision is arbitrary and capricious or illegal. Utah Code Ann. § 17-27a-801(3)(b) (LexisNexis Supp. 2018). "A decision is arbitrary and capricious if the decision is not supported by substantial evidence in the record." *Id.* § 17-27a-801(3)(c)(i). Substantial evidence "is that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *Associated Gen. Contractors v. Board of Oil, Gas & Mining*, 2001 UT 112, ¶ 21, 38 P.3d 291 (quotation simplified). It must be "more than a mere 'scintilla' of evidence[,] though something less than the weight of the evidence." *Patterson v. Utah County Board of Adjustment*, 893 P.2d 602, 604 n.6 (Utah Ct. App. 1995) (quotation simplified).

¶25 Here, the Board's decision was not supported by substantial evidence. We agree with the district court that "insufficient evidence was presented to the Board to distinguish between the public health, safety, and welfare[, or the property

values] affected by the overall operation of [the Plant] and the conditional use requested by the Application."

¶26    Utah County provided no support for the conclusion that the conditional use would degrade the public health, safety, and welfare. The only evidence provided by Utah County was in the form of testimony by members of the public, which included complaints about the Plant's operations generally and the fear that increasing silo capacity would result in greater production and more truck traffic. While the expressed concerns are sincere and likely valid, they are primarily addressed to the general operation of the Plant in an area that has become increasingly residential. They do not focus on the incremental problem posed by the additional height of a few additional silos.

¶27    Critically, Kilgore is not limited in the *number* of silos that it can install and operate, only in the height of the silos, and no evidence was presented to suggest that taller silos would have a greater impact than additional shorter silos. In addition, Kilgore repeatedly explained that if the Board denied the Application, then Kilgore would instead install three or more 40-foot silos on the property to achieve the same result. And Utah County provided no testimony showing any causal link between the height of the silos and the increased effects as opposed to the increased capacity to store materials, which could have been accomplished through permitted uses, such as installing more 40-foot silos. Mere "expressions of support or protest alone shall not constitute the basis of approval or denial." *See* Utah County, Utah, Land Use Ordinance 7-20(D).

¶28    Similarly, Utah County provided no evidence to support the Board's conclusion that the increased height of the silos would degrade surrounding property values. Instead, the testimony given by residents from surrounding areas tied the decrease in property values to the Plant's operation and the attendant secondary effects. No evidence was presented that

taller silos would increase operations beyond the permitted uses and there was no testimony about the visual effect of taller silos that would rebut the appraiser's report.

¶29   We therefore agree with the district court's conclusion that the Board's denial of the Application was not based on substantial evidence.

CONCLUSION

¶30   We conclude the district court did not err in granting Kilgore's petition and setting aside the Board's denial of the Application because Kilgore satisfied its burden of proof that the additional height of the silos would not have a negative effect on the public health, safety, and welfare or surrounding property values. We further conclude the district court correctly determined that the Board's denial was not supported by substantial evidence. Accordingly, we affirm.

_____